**Mohamed ALHALABI, Respondent,**

v.

**MISSOURI DEPARTMENT OF NATURAL RESOURCES, Appellant.**

**No. ED 92091.**

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 24, 2009.

Chris Koster, Attorney General, Jason S. Retter, Assistant Attorney General, St. Louis, MO, for Appellant.

Mary Anne Sedey, Donna Lynn Harper, John D. Lynn, St. Louis, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

The Missouri Department of Natural Resources ("the DNR") appeals from the judgment of the trial court awarding Mohamad Z. Alhalabi ("Alhalabi") actual damages of $187,000.00, punitive damages of $150,000.00, and attorneys' fees of $474,949.00 for a total judgment of $811,949.00 on Alhalabi's hostile work environment claim. The DNR argues: (1) the trial court erred in entering its judgment because it lacked jurisdiction over Alhalabi's hostile work environment claim in that Alhalabi failed to exhaust his administrative remedies; (2) the trial court erred in denying the DNR's motion for a new trial because its judgment erroneously declared and applied the law in that jury instruction number 7 failed to follow the substantive law on a claim based on a hostile work environment; (3) the trial court erred in denying the DNR's motion for new trial on grounds that the evidence at trial was not sufficient to support the submission of a punitive damages instruction with respect to Alhalabi's hostile work environment claim; and (4) the trial court abused its discretion in failing to reduce the hourly rate and the number of remunerated hours claimed in Alhalabi's attorneys' fees request. We affirm.

Alhalabi is an Arab–American, who was born in Lebanon. He is also a member of the Muslim faith. Alhalabi was hired as an engineer by the DNR in 1999. Subsequently, Alhalabi was promoted and from September of 2000 to December 8, 2005,

Alhalabi worked as Regional Director of the St. Louis Region of the Department's Water Protection and Soil Conservation Division. On December 8, 2005, Alhalabi was involuntarily demoted and transferred to a position as Environmental Engineer in the DNR's St. Louis Regional Office.

Subsequently, Alhalabi filed a petition for employment discrimination in violation of the Missouri Human Rights Act ("the MHRA") against the DNR. Prior to filing this suit, Alhalabi filed a timely charge of discrimination with the Missouri Commission on Human Rights ("the MCHR"). The MCHR issued Alhalabi a notice of his right to sue and he filed his petition.

The DNR subsequently filed an answer and a motion for summary judgment. This motion was denied. The DNR also filed a motion for a directed verdict at the close of Alhalabi's evidence and at the close of all evidence, and these motions were also denied.

After a trial, the jury found in favor of the DNR on Alhalabi's discrimination and retaliation claims against it. However, the jury found in favor of Alhalabi on his hostile work environment claim. The jury found Alhalabi incurred actual damages of $187,000.00 and punitive damages of $150,000.00. The trial court entered judgment for these amounts plus $474,949.00 in attorneys' fees for a total judgment of $811,949.00 for Alhalabi.

The DNR subsequently filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, which was denied. This appeal follows.

In its first point, the DNR argues the trial court erred in entering its judgment because it lacked jurisdiction over Alhalabi's hostile work environment claim in that Alhalabi failed to exhaust his administrative remedies as required under the MHRA. We disagree.

■■■ Before initiating a civil action under the MHRA, a claimant must exhaust administrative remedies by timely filing an administrative complaint and either adjudicating the claim through the MCHR or obtaining a right-to-sue letter. *Tart v. Hill Behan Lumber*, 31 F.3d 668, 671 (8th Cir.1994). The doctrine of exhaustion of remedies is a jurisdictional requirement. *Pettigrew v. Hayes*, 196 S.W.3d 53, 56 (Mo.App. W.D.2005). This rule requires that, before applying to the courts for relief, all remedies must be exhausted at the administrative level. *Id.* If all administrative remedies have not been exhausted, the circuit court lacks subject matter jurisdiction to judicially review the administrative decision. *Id.* Thus, because subject matter jurisdiction is an issue of law, our review of whether the trial court had jurisdiction is *de novo* [1]. *Id.*

■■■ In deciding a case under the MHRA, appellate courts are guided by both Missouri law and federal employment discrimination case law that is consistent with Missouri law. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007). Section 213.075.1 RSMo 2000 [2] of the MHRA provides:

---

1. The Missouri Supreme Court has recently held that the trial court technically does not lack subject matter jurisdiction over unexhausted claims, but rather lacks authority to review those claims as a result of the statutory exhaustion requirement. *See J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009). While we recognize the distinc-tion, the end result is the same in both cases, courts should dismiss claims that are not properly exhausted. Further, our standard of review remains *de novo* because we are making a determination on an issue of law.

2. All further statutory references are to RSMo 2000 unless otherwise indicated.

Any person claiming to be aggrieved by an unlawful discriminatory practice may make, sign and file with the commission a verified complaint in writing, within one hundred eighty days of the alleged act of discrimination, which shall state the name and address of the person alleged to have committed the unlawful discriminatory practice and which shall set forth the particulars thereof and such other information as may be required by the commission.

Exhaustion of administrative remedies entitling a claimant to bring a cause of action, under both statutes, requires a claimant to give notice of all claims of discrimination in the administrative complaint. *Stuart v. General Motors Corp.*, 217 F.3d 621, 630 (8th Cir.2000).

■■ The Missouri Supreme Court has indicated that it takes a liberal approach to the fulfillment of procedural requirements under the MHRA. *See Hill v. Ford Motor Co.*, 277 S.W.3d 659, 670 (Mo. banc 2009) (where the Court noted the importance of "the availability of complete redress of legitimate grievances without undue encumbrance by procedural requirements especially [in cases where] demanding full and technical compliance would have no relation to the purposes for requiring those procedures in the first instance."). In other words, exhaustion requires a claimant to give notice of all claims of discrimination in the administrative complaint, but administrative complaints are interpreted liberally in an effort to further the remedial purposes of legislation that prohibits unlawful employment practices. *Tart*, 31 F.3d at 671. As a result, administrative remedies are deemed exhausted as to all incidents of discrimination that are like or reasonably related to the allegations of the administrative charge. *Id.* Further, the scope of the civil suit may be as broad as the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination. *Id.*

■ The DNR contends, relying on *Woelbling v. R.C. Wilson Co.*, 966 F.Supp. 858, 861 (E.D.Mo.1997), that a hostile work environment claim, alleging continuing racial harassment must be separately raised in the administrative charge, because it is not reasonably related to a claim of a discrete act of discrimination. Here, the DNR argues Alhalabi's one-page MCHR charge of discrimination was an insufficient basis for a subsequent civil claim for hostile work environment, and it only raised claims of employment discrimination and retaliation. In Alhalabi's charge of discrimination, he stated:

[The DNR] has recently reprimanded me twice, though it did not have cause for either reprimand. These reprimands were made in the attempt to unlawfully terminate my employment based upon my race, color, religion, national origin, and because of my previous complaints about discrimination against me and others in the office.

My supervisor, Scott Totten, has made false accusations against me in a recent performance evaluation. In this fabricated document, he claims that I have performed poorly in various areas, and alleges several specific deficiencies he knows to be patently false. Mr. Totten has recently ordered me to draft an "action plan" in which I am to respond to his fabricated evaluation with specific ways to resolve his alleged deficiencies. This was also done with the intent of manufacturing reasons to terminate me. Mr. Totten has done all of these things, in the hopes of terminating me because of my race, color, religion and national origin, as well as because of my previous complaints.

Since complaints about discrimination, I have been more harshly targeted and disciplined as a result of my complaints.

In addition to several complaints of discrimination in Alhalabi's MCHR Charge of Discrimination, Alhalabi repeatedly alludes to "previous complaints." Further, Alhalabi checked the box on the Charge of Discrimination form signifying the discriminatory conduct was continuing, and Alhalabi listed a span of over two years, from January 1, 2003 until March 3, 2005, as the "date" on which the discrimination took place. Unlike in cases where there was a discrete act of discrimination, Alhalabi's Charge of Discrimination describes pervasive racially discriminatory conduct. Racial discrimination creates a hostile work environment when discriminatory conduct either creates an intimidating, hostile, or offensive work environment or has the purpose or effect of unreasonably interfering with an individual's work performance. *See Hill*, 277 S.W.3d at 666. In most claims of hostile work environment harassment, the discriminatory acts are not of a nature that can be identified individually as significant events; instead, the day-to-day harassment is primarily significant, both as a legal and as a practical matter, in its cumulative effect. *Pollock v. Wetterau Food Distribution Group*, 11 S.W.3d 754, 763 (Mo.App. E.D.1999). We find in this case Alhalabi's Charge of Discrimination adequately alleges a claim for a hostile work environment.

However, even if we assume for argument's sake that Alhalabi's charge of discrimination does not set forth a claim for a hostile work environment, it is likely that the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination would include an investigation of whether Alhalabi was employed in a hostile work environment. Thus, the charge of discrimination would be adequate to raise the claim in this case. *Tart*, 31 F.3d at 671.

Lastly, federal cases construing a similar federal exhaustion of administrative remedies requirement have held that such requirements serve two purposes: to give notice to the charged party and to provide an avenue for voluntary compliance without resort to litigation. *Hill*, 277 S.W.3d at 669. If allowing suit would not be inconsistent with these purposes, then some cases have forgiven a failure to satisfy every procedural requirement. *Id.* Similarly, here, even if Alhalabi had failed to exhaust his administrative remedies, which we find he did not, such failure did not deprive the DNR of notice nor did the DNR even allege it had suffered any prejudice from a failure to give notice. Alhalabi also filed an internal complaint in which he was able to describe his complaint of pervasive discrimination in greater depth, and the DNR informed him that it would not conduct an internal investigation because he was raising the "same allegations" as in his Charge of Discrimination pending with the MCHR. Also, there were no conciliation efforts by the MCHR because it had not determined there was probable cause to believe a violation had occurred before Alhalabi obtained the right to file his lawsuit.

Therefore, we find the trial court did not err in entering its judgment because Alhalabi adequately exhausted his administrative remedies under the Missouri Human Rights Act with respect to his hostile work environment claim. Point denied.

In its second point, the DNR argues the trial court erred in denying the DNR's motion for a new trial because its judgment erroneously declared and applied the law on civil rights actions under the MHRA in that jury instruction number 7

prejudicially misled, misdirected, and confused the jury by failing to follow the substantive law on a claim for employment discrimination on a theory of a hostile work environment. We disagree.

■ Whether or not a jury was properly instructed is a question of law. *Twin Chimneys Homeowners Ass'n v. J.E. Jones Const. Co.*, 168 S.W.3d 488, 497 (Mo. App. E.D.2005). A proper instruction submits, not evidentiary details, but only the ultimate facts, to avoid undue emphasis of certain evidence, confusion, and the danger of favoring one party over another. *Id.* at 497–98. The test is whether the instruction follows the substantive law and can be readily understood by the jury. *Id.* at 498. When reviewing an alleged instructional error, we view the evidence most favorably to the instruction, disregard contrary evidence, and reverse where the party challenging the instruction shows that the instruction misdirected, misled, or confused the jury, and there is a substantial indication of prejudice. *Id.*

■ Jury Instruction Number 7[3] provided

Your verdict must be for [Alhalabi] on his claim of hostile work environment if you believe:

First, [Alhalabi] was subjected to unwelcome harassment, and,

Second, [Alhalabi's] national origin or religion was a contributing factor in such harassment, and

Third, such harassment affected a term, condition or privilege of [Alhalabi's] employment, and

Fourth, [the DNR] knew or should have known of the harassment and failed to respond with appropriate remedial action, and

Fifth, as a direct result of such conduct, [Alhalabi] sustained damage.

■ To prevail on a claim for hostile work environment, a plaintiff must prove: (1) he is a member of a protected group; (2) he was subjected to unwelcome [protected group] harassment; (3) his [membership in a protected group] was a contributing factor in the harassment; (4) a term, condition, or privilege of his employment was affected by the harassment; and (5) the City knew or should have known of the harassment and failed to take appropriate action. *See Barekman v. City of Republic*, 232 S.W.3d 675, 679 (Mo. App. S.D.2007). Discriminatory harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive enough to alter the conditions of a plaintiffs employment and create an abusive working environment. *See Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 244 (Mo.App. E.D.2006). The conduct must be sufficient to create a hostile work environment, both as it was subjectively viewed by the plaintiff and as it would be objectively viewed by a reasonable person. *Id.* at 245.

The DNR contends jury instruction number 7 failed to comport with substantive law because it did not instruct the jury to conclude that the complained of hostility or harassment was objectively serious and pervasive[4] in nature[5].

**3.** There is no MAI particularly suited for a hostile work environment claim. Both Alhalabi and the DNR's submitted instructions were modifications of MAI 31.24, the instruction for employment discrimination.

**4.** The DNR notes in its reply brief that the phrase, "serious and pervasive," was neces-

sary to inform the jury of the requirement of objectivity.

**5.** The trial court did not submit the DNR's proposed not-in-MAI instruction, which stated:

First, we note that jury instruction number 7 provided that the discrimination had to affect a term, condition, or privilege of Alhalabi's employment. As noted in *Cooper*, discriminatory harassment affects a term, condition, or privilege of employment when it is severe or pervasive. 204 S.W.3d at 244. Thus, when the jury found the discrimination affected a term, condition, or privilege, it is also found the discrimination was severe or pervasive.

▆▆ Even assuming *arguendo* that jury instruction number 7 was improper, the DNR has, nonetheless, failed to show that it was prejudiced by the instruction. The DNR failed to argue in its closing argument that the harassment was not severe or pervasive. Further, the jury awarded punitive damages, and punitive damages are intended to punish outrageous conduct. *Lynn v. TNT Logistics North America Inc.*, 275 S.W.3d 304, 311 (Mo.App. W.D.2008). The fact that the jury awarded punitive damages indicates the discriminatory harassment was severe and pervasive, and indicates that the addition of these words injury instruction number 7 would not have made a difference.

Therefore, the trial court did not err in denying the DNR's motion for a new trial because jury instruction number 7 did not prejudicially mislead, misdirect, or confuse the jury. Point denied.

In its third point, the DNR argues the trial court erred in denying its motion for new trial on grounds that jury instruction number 13 was submitted in error in that the evidence at trial was not sufficient to support the submission of a punitive damages instruction with respect to Alhalabi's hostile work environment claim. We disagree.

Jury instruction number 13 provided:

If you find the issues in favor of [Alhalabi], and if you believe the conduct of [the DNR] as submitted in Instruction Numbers 7 and/or 8 and/or 9 was outrageous because of [the DNR's] evil motive or reckless indifference to the rights of others, then in addition to any damages to which you find [Alhalabi] entitled under Instruction Numbers 7 and/or 8 and/or 9 you may award [Alhalabi] an additional amount as punitive damages in such sum as you believe will serve to punish [the DNR] and to deter [the DNR] and others from like conduct.

▆▆ Section 213.111 provides that the court may award punitive damages to the plaintiff in an action filed pursuant to the MHRA. Whether there is sufficient evidence to support an award of punitive damages is a question of law. *Hoyt v. GE Capital Mortg. Services, Inc.*, 193 S.W.3d 315, 322 (Mo.App. E.D.2006). We review the evidence presented to determine whether it was sufficient, as a matter of law, to submit the claim for punitive damages. *Id.* In doing so, we view the evidence and all reasonable inferences in the

---

On [Alhalabi's] claim of hostile work environment, your verdict must be for [Alhalabi] if you believe:

First, [Alhalabi] is a member of a protected class by reason of his religion or national origin, and

Second, [Alhalabi] was subjected to unwelcome harassment, and

Third, [Alhalabi's] religion or national origin *was a contributing factor in such* harassment, and

Fourth, such harassment was so severe and pervasive that it materially affected a term, condition, or privilege of [Alhalabi's] employment, and

Fifth, [the DNR] knew or should have known of such harassment and failed to respond with appropriate remedial action, and

Sixth, [the DNR's] failure to take appropriate remedial action directly caused or directly contributed to cause damage to [Alhalabi].

light most favorable to submissibility and we disregard all evidence and inferences which are adverse thereto. *Id.* Only evidence that tends to support the submission should be considered. *Id.* A submissible case is made if the evidence and the inferences drawn therefrom are sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity that the defendant's conduct was outrageous because of evil motive or reckless indifference. *Id.*

 Punitive damages require clear and convincing proof of a culpable mental state, either from a wanton, willful, or outrageous act, or from reckless disregard for an act's consequences such that an evil motive may be inferred. *Id.* Punitive damage awards have been sustained when the court found management participated in the discriminatory conduct and treated the plaintiff differently from others. *H.S. v. Board of Regents, Southeast Missouri State University,* 967 S.W.2d 665, 672 (Mo. App. E.D.1998). Supervisory employees, having general powers or authority beyond that of mere "ministerial" employees, are treated as agents of a corporation, and thus, knowledge of the supervisor's conduct, by the supervisor himself, may be imputed to the corporation. *Stewart v. Alton and Southern Ry. Co.,* 849 S.W.2d 119, 125 (Mo.App. E.D.1993).

 The DNR argues there was no evidence that the DNR's conduct relative to the hostile work environment was the result of an evil motive or reckless indifference. As a result, the DNR asserts there was no evidence to support the submission of jury instruction number 13, and it was submitted in error. The DNR also maintains the substantive claim for hostile work environment does not include any elements that necessarily encompass a finding that a defendant acted with an evil motive or reckless indifference. Thus, the DNR contends jury instruction number 13 should not have referenced jury instruction number 7, the hostile work environment instruction.

However, in the light most favorable to submissibility, in this case, there was evidence that the DNR acted with reckless disregard for Alhalabi's rights when it failed to properly investigate his complaints of a pattern of discrimination and failed to take effective measures to stop the discrimination, which included the incessant assertion of unfair and unfounded complaints and grievances against Alhalabi and anonymous and inflammatory anti-Arab and anti-Muslim postings and mailings. These mailings and posting included a letter to the Governor from "concerned staff" that falsely stated Alhalabi had gotten his Regional Director job because of his ethnic background, a posting on an office bulletin board that compared Arab Muslims to animals who deserve annihilation by the United States, the "Cowboys and Muslims" flyer left in his mailbox that joked the Arab Muslims would be exterminated like American Indians, and the note left on Alhalabi's desk that stated "Moslem terrorist" and "your kind is not wanted here." In addition, the evidence showed the DNR knew of the harassment of Alhalabi and still failed to take effective steps to correct the problem, which continued for multiple years.

Therefore, the trial court did not err in denying the DNR's motion for new trial because there was sufficient evidence to support the submission of jury instruction number 13 for punitive damages. Point denied.

In its fourth point, the DNR argues the trial court abused its discretion in failing to reduce the hourly rate and the number of remunerated hours claimed in Alhalabi's attorneys' fees request because the hourly rates were unreasonable in that the rate

used to calculate the lodestar[6] did not reflect the fees the attorneys actually charged and because Alhalabi only partially prevailed at trial in that the jury found for the DNR on two of the three claims. We disagree.

The DNR contends the rate they were ordered to pay was greater than the rate Alhalabi paid for the majority of his attorneys' work in the case. In particular, the DNR alleges Alhalabi's attorneys raised their rates one month before trial of this case from $300 per hour to $400 per hour, and the majority of the work done in this case was done before the rates were raised. However, the DNR maintains the trial court awarded fees based on the higher rates. The DNR argues the trial court abused its discretion by failing to properly consider and account for the timing of the rate hikes relative to the timing of the work performed. Further, the DNR contends Alhalabi was only partially successful at trial and the attorneys' fees should have been modified to reflect this success. In particular, Alhalabi prevailed on one of his three claims, which was not meaningfully related to the other two claims, yet the DNR states he was awarded 85 percent of the attorneys' fees he requested.

The language of Section 213.111.2 allows a court to award "court costs and reasonable attorney fees to the prevailing party, other than a state agency." The determination of reasonable attorneys' fees is in the sound discretion of the trial court and shall not be reversed unless the amount awarded is arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration. *Essex Contracting, Inc. v. Jefferson County*, 277 S.W.3d 647, 656 (Mo. banc 2009). Where there is no contrary showing, the trial court is presumed to know the character of the services rendered in duration, zeal, and ability. *Id.* The trial court is considered to be an expert on the question of attorney fees; the court that tries a case and is acquainted with all the issues involved may fix the amount of attorneys' fees without the aid of evidence. *Id.* An attorney's current hourly rate should be used to compensate an attorney in those cases where the trial court determines that there is a need to compensate the attorney for a delay in payment of fees. *Pollock*, 11 S.W.3d at 774; *see also Missouri v. Jenkins*, 491 U.S. 274, 283–284, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).

The DNR argues, relying on *Williams v. Finance Plaza, Inc.*, 78 S.W.3d 175, 185 (Mo.App. W.D.2002), that the hostile work environment claim on which he prevailed is unrelated to the discrimination and retaliations claims on which he did not prevail, and that the trial court failed to account for this in its award of attorneys' fees. A prevailing party is one that succeeds on any significant issue in the litigation which achieved some of the benefit the parties sought in bringing suit. *Lippman v. Bridgecrest Estates I Unit Owners Ass'n, Inc.*, 4 S.W.3d 596, 598 (Mo. App. E.D.1999).

If the plaintiff's claims for relief are based on different legal theories and facts and counsel's work on one claim is unrelated to his work on another claim, the unrelated claims must be treated as if they had been raised in separate lawsuits, and, therefore, no fee may be awarded for services on the unsuccessful and unrelated claims. *Williams*, 78 S.W.3d at 185. On the other hand, if the claims for relief have

---

6. The lodestar, the starting point in determining attorneys' fees, is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Griffin v. Ozark County, Mo.*, 688 F.Supp. 1372, 1373 (W.D.Mo.1988).

a common core of facts and are based on related legal theories and much of counsel's time is devoted generally to the litigation as a whole making it difficult to divide the hours expended on a claim-by-claim basis, such a lawsuit cannot be viewed as a series of distinct claims. *Id.* Instead, where a plaintiff's claims are related and he has obtained excellent results overall, his counsel should recover a fully compensatory fee that should not be reduced simply because he has not prevailed on every litigated claim. *Id.*

 The trial court awarded Alhalabi $474,949.00 in attorneys' fees. In doing so the trial court found "the hourly rates requested by [Alhalabi's] counsel are reasonable, that the recalculated hours attached hereto were reasonably expended and that a 15 percent reduction in fees is appropriate to account for time attributable solely to the [retaliation] claim."

Alhalabi's attorneys worked on the claim with the understanding that they would only recover attorneys' fees if Alhalabi prevailed in his suit. In addition, Alhalabi's contract with his attorneys stated they would be paid at the amount in effect at the time of the judgment. Thus, his attorneys could be compensated at the current rate when the judgment was rendered according to the contract and also for the delay in payment of fees. *Pollock,* 11 S.W.3d at 774.

Further, Alhalabi's claims for hostile work environment, discrimination and retaliation have a common core of facts and are based on related legal theories. The trial court found that some part of the discrimination or harassment claims was separable from the hostile work environment claim. As a result, the trial court

properly used its discretion to reduce the award of attorneys' fees by 15 percent for the retaliation claim.

Therefore, the trial court did not abuse its discretion in failing to reduce the hourly rate or the number of remunerated hours claimed in Alhalabi's attorneys' fees request[7]. Point denied.

The judgment of the trial court is affirmed.

SHERRI B. SULLIVAN, P.J., and NANNETTE A. BAKER, J., concur.

---

7. Because Alhalabi has prevailed on his appeal, he is entitled to an award of attorneys' fees and costs under Section 213.111.2. *See Pollock,* 11 S.W.3d at 774–75. Alhalabi's motion for attorneys' fees and costs on appeal, which was taken with the case, is hereby granted in the amount of $46,276.00.