Glenda Sue CLAUS, Respondent,

v.

INTRIGUE HOTELS, LLC, Appellant.

No. WD 71927.

Missouri Court of Appeals,
Western District.

Dec. 28, 2010.

Dennis J. Cassidy, for Appellant.

Kristi L. Kingston, for Respondent.

Before Division One: THOMAS H. NEWTON, Presiding Judge, JAMES M. SMART, JR., Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Intrigue Hotels, L.L.C. appeals from a judgment entered in the Circuit Court of Jackson County in favor of Glenda Claus in her action for age discrimination, awarding her $50,000.00 in actual damages and $150,000.00 in punitive damages. For the following reasons, the judgment is affirmed.

Claus started working at the Park Place Hotel in Kansas City, Missouri, in 1984 as a room attendant. Intrigue Hotels acquired the Park Place Hotel in 2004. Frank Copidas, Jr. was the majority owner of Intrigue Hotels. In 2006, the head of housekeeping, Mark Ihde, promoted Claus to the position of housekeeping supervisor. After Ihde resigned on September 29, 2007, Dalinda Galaviz replaced him as head of housekeeping on October 15, 2007. On December 7, 2007, Galaviz fired Claus, who was 63–years–old at the time.

Claus filed a timely Charge of Discrimination against Intrigue Hotels and Copidas with the Missouri Commission on Human Rights ("the MCHR") and, subsequently, received a Notice of Right to sue from the MCHR. On September 30, 2008, Claus filed a petition in the Circuit Court of Jackson County claiming that Intrigue Hotels and Copidas had discriminated against her based upon her age and seeking actual and punitive damages under the Missouri Human Rights Act.

A bifurcated jury trial was conducted starting on August 18, 2009. The jury eventually returned a verdict of $50,000.00 in favor of Claus against Intrigue Hotels and a finding that punitive damages were warranted. The jury found in favor of Copidas on her claims against him. The issue of punitive damages was then tried and submitted to the jury, which eventually awarded $150,000.00 in punitive damages. The trial court entered judgment in accordance with the jury's verdict. Intrigue Hotels brings eight points on appeal from that judgment.

■ We first address Appellant's claim that the evidence was insufficient to support the jury's award of actual damages to Claus. Appellant contends that the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict because insufficient evidence was presented to support a finding that age was a contributing factor in the termination of Claus's employment.

Section 213.055 of the MHRA "prohibits employers from engaging in discriminatory employment practices, including wrongful termination." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 819 (Mo. banc 2007). "The MHRA defines 'discrimination' to include any unfair treatment based on race, color, religion, national origin, ancestry, sex, age [1] as it relates to employment, disability, or familial status

---

1. "The MHRA protects persons aged 40 to 70 from age discrimination." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820 n. 8 (Mo. banc 2007) (citing § 213.010(1)).

as it relates to housing." *Id.* (internal quotation omitted). "Nothing in this statutory language of the MHRA requires a plaintiff to prove that discrimination was a substantial or determining factor in an employment decision; if consideration of age, disability, or other protected characteristics contributed to the unfair treatment, that is sufficient." *Id.*

"MAI 31.24 sets out the elements necessary for a submissible case of age discrimination." *Stanley v. JerDen Foods, Inc.,* 263 S.W.3d 800, 803 (Mo.App. W.D.2008). Consistent with MAI 31.24, the jury was instructed to return a verdict in favor of Claus if it found (1) Appellant had discharged Claus, (2) that age was a contributing factor to such discharge, and (3) that Claus sustained damages as a result of such conduct. Appellant challenges the sufficiency of the evidence to establish that age was a contributing factor in Claus's discharge.

Claus was 63–years–old when she was fired by Appellant and replaced by a 31–year–old employee, shortly after Galaviz had inquired about Claus's age. Galaviz testified that Claus was "completely blindsided" with the news of her termination and that she had never been warned that her performance was deficient in any way. Galaviz told Claus she was being fired because she did not "fit in." The Personnel Action Form provided to Claus stated that she was being let go as a part of a "reduction in staff." While Appellant initially claimed that Claus was fired as part of a staff reduction, Claus was the only employee that was fired at that time.

After Claus filed her claim of age discrimination, Appellant began claiming that Claus had been terminated for performance reasons as well as a reduction in force. By trial, in its motions for directed verdict, for JNOV, and for new trial, and in its submitted defense instruction, Appellant merely asserted that Claus was terminated for poor job performance.

The jury could more than reasonably have rejected Appellant's later claims that Claus was fired for performance deficiencies in light of (1) Appellant's failure to mention that rationale until after Claus filed her discrimination claim months later, (2) Claus's record of positive job performance evaluations and lack of "write-ups,"[2] and (3) Galaviz's failure to admonish or warn Claus regarding deficiencies in her job performance despite regularly "writing-up" other employees. In fact, the retained housekeeping supervisor, who was in her thirties, had been written up multiple times for excessive absences. Moreover, Ihde, Claus's supervisor up until September 29, 2007, testified Claus had always performed all of her duties well the entire time he was at the hotel.

Galaviz testified that she wanted to have employees who would be at the hotel for the "long haul." Galaviz also told Copidas and Starlette McCale, the hotel's general manager, that Claus was "resistant to change," a phrase Galaviz acknowledged is frequently used as code by human resources people when discharging an employee for being too old. The jury could reasonably have taken these statements to mean that Galaviz did not want older employees and that Claus's age was a factor in her firing. The evidence supports the jury's finding of age discrimination. Point denied.

■ We next examine Appellant's claim that the evidence was insufficient to support an award of punitive damages.

---

2. Claus had received a raise in May 2007. Ihde, her supervisor before Galaviz, testified that Claus had a strong work ethic, excellent attendance, completed her work on time, and that she always followed instructions.

"Section 213.111.2 permits recovery of punitive damages in claims brought under the Missouri Human Rights Act." *Gilliland v. Missouri Athletic Club*, 273 S.W.3d 516, 520 (Mo. banc 2009). "Under Missouri law, a plaintiff is entitled to punitive damages if the plaintiff proves by clear and convincing evidence that the defendant's conduct was outrageous because of the defendant's evil motive or reckless indifference to the rights of others." *Id.* "Whether there is sufficient evidence to support an award of punitive damages is a question of law, and this Court's review is *de novo.*" *Id.* In making that determination, however, "we view the evidence and all reasonable inferences in the light most favorable to submissibility and we disregard all evidence and inferences which are adverse thereto." *Alhalabai v. Missouri Dep't of Natural Res.*, 300 S.W.3d 518, 528–29 (Mo.App. E.D.2009).

■■ "If a defendant intentionally does a wrongful act, and knows at the time the act was wrongful, it is done wantonly and with a bad motive." *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 870 (Mo.App. E.D.2009). "An evil intent may also be implied from reckless disregard of another's rights and interests." *Id.* "Punitive damage awards have been sustained when the court found management participated in the discriminatory conduct and treated the plaintiff differently from others." *Alhalabi*, 300 S.W.3d at 529. "Proof offered to support an employee's underlying substantive claim and the employee's additional claim for punitive damages need not be mutually exclusive, and often is not." *Williams*, 281 S.W.3d at 870–71.

■ In this case, Claus was required to submit evidence allowing a reasonable fact-finder to conclude that age was a contributory factor in Appellant's decision to terminate her employment. Nothing more was required to prove her underlying claim. "Evidence that meets this burden may potentially allow a reasonable fact-finder also to conclude that [Appellant] acted with evil motive or reckless indifference." *Id.* at 870. Thus, the jury could consider all of the evidence recited *supra* in considering the punitive damage claim. In particular, the jury had before it evidence that Galaviz had an extensive knowledge of employment law, having engaged in consulting work in human resources, including training small to medium sized businesses in employment law, and having assisted other employers with drafting their anti-discrimination policies and procedures. Both Copidas and Galaviz knew it was against the law to fire an employee because of an employee's age. Yet they fired Claus, a 63–year–old employee, with a spotless record in 23 years of employment, and replaced her with someone in her thirties who had been written up multiple times for excessive absences. At the same time Claus was being fired, several younger employees with documented performance problems were retained and even promoted or given raises. Moreover, Appellant altered its rationale for firing Claus several times and created pretextual reasons for the firing. Based on this, and the other evidence in the record, the jury reasonably could find that Galaviz, knowing that it was illegal, fired Claus because of her age, preferring younger employees that would be there for the "long haul." Thus, clear and convincing evidence supports a finding that Galaviz intentionally fired Claus based upon her age and that she knew that firing Claus on that basis was wrongful, thereby evidencing an evil motive.[3] The jury's decision to award pu-

3. "Supervisory employees, having general powers or authority beyond that of mere 'ministerial' employees, are treated as agents of a corporation, and thus, knowledge of the

nitive damages is supported by the evidence and is not against the weight of the evidence. Point denied.

Appellant next asserts that the trial court abused its discretion in excluding from evidence, during the punitive damage portion of the trial, testimony from David Thiessen about Appellant's dire financial situation. Appellant claims the exclusion of that testimony was an improper discovery sanction resulting from its failure to produce financial records before trial in that it had not been required to produce those documents because the trial court had not entered a finding under § 510.263.8 that Claus would more likely than not be able to present a submissible case of punitive damages.[4]

When Appellant sought to introduce testimony from Thiessen related to the financial condition of Appellant, Claus objected to that testimony based upon Appellant's failure to establish an adequate foundation for that testimony and because Appellant had not produced financial records in response to prior discovery requests and failed to produce such records *after the jury entered its verdict finding punitive damages should be awarded prior to the start of the punitive damage phase of trial.* The court excluded that testimony, noting that Thiessen was not an owner of the company, was not an employee of the company, and did not have access to the records of the company. The court also noted that, without any of the company's financial records requested in discovery being produced prior to the punitive damage phase of the trial, Claus had no way to cross-examine Thiessen about the financial situation of Appellant.

"The admission or exclusion of evidence rests in the sound discretion of the trial court, and the court's decision will be reversed only if it constitutes an abuse of discretion." *Peters v. ContiGroup,* 292 S.W.3d 380, 392 (Mo.App. W.D.2009). "Where evidence has been excluded, the issue is not whether the evidence was admissible, but rather whether the trial court abused its discretion in excluding it." *UMB Bank, NA v. City of Kansas City,* 238 S.W.3d 228, 231 (Mo.App. W.D.2007) (internal quotation omitted). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Peters,* 292 S.W.3d at 392 (internal quotation omitted). "The trial court's ruling will be upheld when any recognizable ground exists on which the trial court could have rejected the evidence." *Arrington v. Goodrich Quality Theaters, Inc.,* 266 S.W.3d 856, 864 (Mo.App. S.D. 2008) (internal quotation omitted).

Appellant's point challenges the trial court's ruling as a discovery sanction for failure to provide Claus with the financial records prior to trial. The trial court made no such ruling. The trial court excluded Thiessen's testimony from evidence because (1) Thiessen was not an owner or employee of the company and had no access to the corporation's financial documents, thereby precluding sufficient personal knowledge of the subject matter, and

---

supervisor's conduct, by the supervisor himself [or herself], may be imputed to the corporation." *Alhalabai v. Missouri Dep't of Natural Res.,* 300 S.W.3d 518, 529 (Mo.App. E.D. 2009).

4. Under § 510.263.8, "[d]iscovery as to a defendant's assets shall be allowed only after a finding by the trial court that it is more likely than not that the plaintiff will be able to present a submissible case to the trier of fact on the plaintiff's claim of punitive damages."

(2) the requested financial documents had not been provided to Claus subsequent to the jury's verdict and prior to trial of the punitive damage phase, thereby preventing Claus from reviewing the corporation's records in order to allow effective cross-examination of Thiessen. Appellant's point does not challenge either of these reasons for the trial court's ruling. Because the actual grounds upon which the trial court excluded the testimony are not challenged on appeal, we must affirm the trial court's decision. Point denied.[5]

■ Appellant also asserts a point on appeal claiming that the trial court erred in denying its motion for remittitur because the jury's award of $150,000.00 in punitive damages exceeded fair and reasonable compensation for Claus's injuries. Appellant argues that an improperly executed verdict that was rejected by the court during the liability phase of the trial evidenced the intent of the jury to award $80,000.00 in punitive damages and that, since no evidence was presented in the punitive damages phase of the trial, the record does not support an amount higher than $80,000.00.

■ Section § 537.068 vests the trial court with discretion to remit a verdict if the evidence, viewed in the light most favorable to the verdict, does not support the amount awarded by the jury. § 537.068.[6] "We will not disturb the trial court's decision to grant or deny remittitur absent an abuse of discretion." *Brown v. Cedar Creek Rod & Gun Club*, 298 S.W.3d 14, 21 (Mo.App. W.D.2009). "Generally, the decision to award punitive damages is peculiarly committed to the jury and the trial court's discretion, and the appellate

court will only interfere in extreme cases." *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 810 (Mo.App. W.D. 2008) (internal quotation omitted). "On appellate review, an abuse of discretion is established when the punitive damage award is so disproportionate to the factors relevant to the size of the award that it reveals improper motives or a clear absence of the honest exercise of judgment." *Id.* (internal quotation omitted). "In other words, the amount of punitive damages must somehow be related to the wrongful act and the actual or potential injury resulting therefrom, although there is no fixed mathematical relation between the amount of actual damages and the amount of punitive damages awarded." *Id.* (internal quotation omitted). "Only when the amount is manifestly unjust will appellate courts interfere with or reduce the size of a verdict." *Id.* (internal quotation omitted).

■ "A case-by-case analysis is utilized to evaluate punitive damages awards." *Id.* "We review the evidence in a light most favorable to the verdict and will disturb the judgment only when the verdict is manifestly unjust." *Brown*, 298 S.W.3d at 21.

Appellant's claim on appeal is based entirely upon notes sent to the judge by the jury and an incomplete verdict form. Early on, the jury returned a verdict finding in favor of Claus against Appellant and awarding $130,000 in compensatory damages. That verdict did not, however, reflect whether the jury had found that punitive damages should also be awarded. When the issue of punitive damages was

---

5. Moreover, even were we to *sua sponte, ex gratia,* review the propriety of the trial court's actual reasons for its ruling, we would not be left with the impression that the trial court's ruling was contrary to the logic of the circum-

stances or that it was so unreasonable and arbitrary as to shock the sense of justice.

6. All statutory references are to RSMo 2000 unless otherwise noted.

referred back to the jury, the jury requested a new verdict form and was provided one. Later, the jury sent down a question that stated, "During the second stage are we to include the amount of punitive damages? The amount we sent down included punitive damages." The Court responded, "If you find that Defendant Intrigue Hotels is liable for punitive damages in this stage of trial, you will be given further instructions for assessing the amount of punitive damages in the second stage of the trial." The jury later returned its verdict awarding Claus $50,000.00 in compensatory damages and finding that an award of punitive damages was appropriate. The case then proceeded to the punitive damage phase where the parties presented their arguments on punitive damages and the jury was instructed on how to assess punitive damages. The jury subsequently returned a punitive damages award against Appellant for $150,000.00.

Appellant argues that the jury notes establish that the jury had included $80,000.00 in punitive damages in the incomplete verdict form that purported to award $130,000.00 in compensatory damages. Appellant reasons that since the jury ultimately awarded just $50,000.00 in compensatory damages, and indicated that it had included punitive damages in its incomplete verdict form, that the only logical explanation is that the jury intended $80,000.00 as punitive damages. Appellant further asserts that nothing in the record provides an evidentiary basis for the jury later awarding more than $80,000.00 in punitive damages.

The flaws in Appellant's reasoning are manifest. First, at the time the jury returned its incomplete verdict form, it had not yet heard arguments on the issue of punitive damages and, more importantly, had not yet been instructed on how to assess punitive damages. Thus, at the time the incomplete verdict form was returned, the jury had no knowledge or understanding of the legal basis for punitive damages or how to award them. The fact that the jury stated that it had included punitive damages in the $130,000.00 damage award in the incomplete verdict form does not in any way prove that the jurors intended only $50,000.00 in compensatory damages and the balance in punitive damages. Since the jury was uninformed at the time, it is no less likely that it intended $129,999.00 in compensatory damages and $1.00 in punitive damages.

Finally, even assuming, *arguendo*, that the jury definitely intended to award $80,000.00 in punitive damages at the time the incomplete verdict form was returned, the jury had every right after arguments and proper instruction to decide on a different amount as a result of having a proper understanding of how they were to assess punitive damages. Point denied.

■■ Appellant also brings a point claiming that the trial court erred in excluding from evidence, during the liability stage of trial, evidence establishing that Appellant was experiencing financial difficulties and that a lender had assumed control of hotel operations in July 2009. Appellant argues that this evidence was relevant to establish that Appellant had a non-discriminatory reason for terminating Claus.

■■ As noted *supra*, "[t]he admission or exclusion of evidence rests in the sound discretion of the trial court, and the court's decision will be reversed only if it constitutes an abuse of discretion." *Peters*, 292 S.W.3d at 392. "To be admissible, evidence must be logically and legally relevant." *Eckerd v. Country Mut. Ins. Co.*, 289 S.W.3d 738, 743 (Mo.App. E.D. 2009). "Evidence is logically relevant if it tends to make any fact at issue more or

less probable or tends to corroborate other relevant evidence." *Glover v. State*, 225 S.W.3d 425, 429 (Mo. banc 2007). "Legal relevance is a determination of the balance between the probative and prejudicial effect of the evidence." *Id.* "The determination of whether evidence is legally relevant is within the sound discretion of the trial court." *Eckerd*, 289 S.W.3d at 743.

The trial court could more than reasonably have determined that the fact that a bank took over hotel operations a year and a half after Claus was fired had little to no probative value with regard to whether she was fired as a result of age discrimination. The trial court did not abuse its discretion in excluding that evidence. Point denied.

■ Next, Appellant claims that the trial court erred in excluding Exhibit 107, a written account of a meeting Claus had with Loanna Santiago and Michelle Forgues on March 3, 2006, from evidence. When Appellant sought to introduce that exhibit, Claus objected claiming that an insufficient foundation had been laid for its admission and that the document contained inadmissible hearsay. The trial court excluded the exhibit from admission, noting that McHale, the general manager of the hotel at the time Claus was fired, through whom Appellant sought to establish a foundation, was not with the company at the time Exhibit 107 was created and that nothing indicated that McHale had ever seen the exhibit before or had any knowledge of it. Appellant argues on appeal that a sufficient foundation was established for the admission of that exhibit under the business records exception to the hearsay rule.

"The trial court is vested with broad discretion in ruling on questions of admissibility." *State v. Newlon*, 216 S.W.3d 180, 186 (Mo.App. E.D.2007). "Absent a clear showing of an abuse of that discretion, we will not interfere with the trial court's ruling." *Id.*

■ Section 490.680 provides that:
[a] record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Thus, "[t]o establish the foundation for the admission of a business record, the testifying witness need only to be a custodian of the record, or other qualified witness, and must testify to the record's identity, mode of preparation, and that it was made in the regular course of business at or near the time of the act, condition, or event." *State v. Tillman*, 289 S.W.3d 282, 295 (Mo.App. W.D.2009) (internal quotation omitted). "[T]he 'bottom line' regarding the admissibility of the business records is the discretionary determination by the trial court of their trustworthiness." *Alberswerth v. Alberswerth*, 184 S.W.3d 81, 101 (Mo.App. W.D.2006) (internal quotation omitted). "A trial court is afforded broad discretion in determining whether the parties complied with section 490.680." *Id.* at 101–02.

Appellant claims that a sufficient foundation was established for the admission of Exhibit 107 because McHale testified that she knew the hotel kept personnel files on its employees, that personnel files were maintained in the ordinary scope and course of the hotel's business, and that she had some general familiarity with the content of employee personnel files. Appellant further relies on the McHale's testimony, after having been asked if Exhibit 107 had been maintained in Claus's personnel file, that "[i]t should have been."

The trial court cannot be deemed to have abused its discretion in excluding Exhibit 107. Even assuming, *arguendo*, that McHale was established to be a "qualified witness" for the purposes of § 490.680, McHale offered no testimony specifically addressing the mode of Exhibit 107's preparation or whether it was prepared in the regular course of business at or near the time of the meeting of March 3, 2006. Point denied.

■■■ Appellant next claims that the trial court abused its discretion in allowing portions of Exhibit 2, Appellant's response letter to the Missouri Commission on Human Rights, into evidence because the probative value of that evidence was outweighed by its prejudicial effect. In its argument, Appellant fails to specify what portions of Exhibit 2 were read into evidence, which portions it believes were erroneously admitted, or to explain how it was prejudiced by the admission of that evidence. "An error in the admission or exclusion of evidence will only result in reversal if the appellant was prejudiced by it." *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 165 (Mo.App. W.D. 2006). Because Appellant has failed to identify in its argument what prejudice it suffered from the trial court's admission of this evidence, there is nothing for this court to review. *Id.* (citing *Wood v. Wood,* 94 S.W.3d 397, 404 (Mo.App. W.D.2003)). Point denied.

■■■ Finally, Appellant claims that the trial court committed reversible error by giving the jury a "hammer instruction" rather than declaring a mistrial after the jury reported being deadlocked after deliberating for three and a half hours. Appellant argues that the instruction was improper because no such instruction is contained in the Missouri Approved Instructions and because it coerced a verdict from the jury.

■■■ Whether a jury was instructed properly is a question of law to be reviewed *de novo* on appeal. *Klotz v. St. Anthony's Med. Ctr.,* 311 S.W.3d 752, 767 (Mo. banc 2010). "The decision, in the face of a deadlock in civil cases, to declare a mistrial or urge the jury to continue deliberating is within the discretion of the trial court." *Id.* "Oral instructions that encourage a civil jury to reach a verdict are proper so long as they do not coerce the verdict." *Id.*

■■■ The fact that no hammer instruction is contained in the Missouri Approved Instructions for civil cases does not preclude their use. *Id.* at 768. Indeed, an instruction modeled after MAI–CR 1.10 "has been held to be appropriate in civil cases." *Id.*

■■■ The trial court offered the following instruction to the jury after it had reported being deadlocked:

> But I want to read you one more jury instruction. And I want you to listen to this instruction and go back upstairs and see what you can do, and then we'll see what happens.

> "You should make every reasonable effort to reach a verdict as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours and, in a spirit of tolerance and understanding, endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court."

> And with that one additional instruction, I'd just like to ask you to go upstairs and see if you are able to reach a ver-

dict. And I'll expect to hear something from you. And I see the smiles. Thank you.

Nothing about the instruction given or the circumstances surrounding it establishes that the trial court coerced a verdict from the jury or that the trial court abused its discretion in any way. Moreover, the compensatory and punitive damage verdict forms in this case were signed by fewer than all twelve jurors. As noted in *Garner v. Jones*, 589 S.W.2d 66, 69 (Mo.App. W.D. 1979), and *Nash v. Plaza Electric, Inc.*, 363 S.W.2d 637, 641 (Mo.1962), the fact that the verdicts were not unanimous supports the conclusion that the jury was not coerced. Point denied.

Having found no merit to any of Appellant's points on appeal, the judgment of the trial court is affirmed. As Claus has prevailed on appeal, we next consider her motion for attorney's fees and costs incurred during the appeal, which was taken with the appeal.

Claus timely filed a motion for attorney's fees and costs related to her appeal as the prevailing party in a human rights action pursuant to § 213.111.2.[7] "The language of Section 213.111.2 allows a court to award 'court costs and reasonable attorney fees to the prevailing party'" in a human rights action. *Alhalabai v. Missouri Dep't of Nat. Res.*, 300 S.W.3d 518, 530 (Mo.App. E.D.2009).

■ Appellant opposes an award of attorney's fees, claiming that neither § 213.111.2 nor the case law allow for this Court to grant such an award. Appellant is incorrect in both those assertions. As noted, § 213.111.2 explicitly provides that "[t]he court ... may award court costs and reasonable attorney fees to the prevailing party...." The award of costs and attorneys fees authorized by § 213.111.2 was meant to fully compensate for the costs of prosecuting the matter to final judgment. *Pollock v. Wetterau Food Dist. Group*, 11 S.W.3d 754, 775 (Mo.App. E.D.1999). This includes any reasonable hours spent and expenses incurred in connection with an appeal of the judgment below. *Id.* As noted by this Court in the context of the Federal Odometer Act, "[r]efusing to compensate an attorney for the time reasonably spent on appellate work defending a judgment would be inconsistent with the intent of [the Legislature] in providing for an award of attorney's fees." *Williams v. Finance Plaza, Inc.*, 78 S.W.3d 175, 188 (Mo.App. W.D.2002). The same logic applies to the Missouri Human Rights Act. Accordingly, Claus' request for attorney's fees on appeal is granted.

While this Court has expertise on the subject of appellate attorney's fees, *In re C.W.*, 257 S.W.3d 155, 159 (Mo.App. E.D. 2008), and has the authority to enter an award of appellate attorney fees pursuant to § 213.111.2, *Alhalabi*, 300 S.W.3d at 530 n. 7, trial courts are also considered experts on the subject of attorney's fees. *Williams v. Finance Plaza, Inc.*, 78 S.W.3d 175, 184 (Mo.App. W.D.2002). Moreover, trial courts are generally in a better position to take evidence and hear argument relating to attorney fees. *In re C.W.*, 257 S.W.3d 155, 159 (Mo.App. E.D. 2008). Therefore, the case is remanded to the trial court for an award of reasonable attorneys' fees and costs on appeal.

All concur.

---

7. Pursuant to Local Rule XXIX of this Court, any party seeking an amount due for attorney's fees on appeal pursuant to contract, statute, or otherwise must file a separate motion for such fees before the case is submitted.