EDWARD R. ARDINI, JR., JUDGE
Dawn Bram appeals a judgment of the Circuit Court of Cass County granting summary judgment to her former employer, AT&T Mobility Services, LLC ("AT&T"), on Bram's claims under the Missouri Human Rights Act ("MHRA") of racial discrimination, racially hostile work environment, and retaliation. Analyzing Bram's claims under the newly amended version of the MHRA, the trial court found that Bram failed to establish a prima facie case for each of her claims. We find the trial court erred in granting summary judgment to AT&T on Bram's discrimination and hostile work environment claims. We find the trial court did not err, however, in granting summary judgment on Bram's retaliation claim. We reverse in part, affirm in part, and remand for further proceedings.
Factual and Procedural Background[1]
Bram (Caucasian), began working for AT&T in August of 2011 as a retail sales consultant. Bram sold phones and products in AT&T's Oak Park retail store. Later that year, Bram was transferred to AT&T's Belton store. In January of 2013, Deja Rogers (African-American) became the assistant manager of the Belton store. From July to October 2013, Bram took short-term disability leave for a medical condition. While Bram was on leave, Iesha Lynch (African-American) became the manager of the Belton store.
In the fall of 2013, various employees at the Belton store heard Lynch and Rogers make disparaging remarks about Caucasians. Megan Sale heard Lynch say that she would "not hire another f-cking white woman again." Sale and Crystal Clark heard Lynch say she would never hire or train another white woman. Similarly, Amy Rennau, Elizabeth Yount, and Jonathan Boren heard Lynch and Rogers say that they would not hire or train another white person. Sale and Rennau heard Lynch say the phrase "f-cking white b-tch." Sale claimed Lynch said Caucasian women were worthless, could not perform their jobs, and were a waste of Lynch's and Roger's time. Rennau heard Lynch say she only wanted to hire African-Americans.
Rebekah Vallejos was the area manager with authority over the Belton store. In *792 October 2013, upon return from her disability leave, Bram contacted Vallejos for assistance. Bram informed Vallejos that she needed training on the new tablets, but Lynch and Rogers would not allow her the training. Vallejos responded that Lynch and Rogers could provide training at their discretion and that Bram needed to listen to her managers' instructions.
Lynch and Rogers criticized Bram's performance and interactions with customers even though Bram had been performing satisfactorily. Bram achieved "#1 in sales" for the fourth quarter of 2013 and continued to be a top performer in early 2014.
Lynch and Rogers blocked sales from Caucasian employees and diverted them to African-American employees, even when customers asked for one of the Caucasian employees by name. Customers would specifically ask for Bram by name, but Lynch and Rogers gave these sales to other employees. Lynch and Rogers "made sure" African-American employees received credit for sales that were completed by other associates. These practices affected the income of the Caucasian employees.
African-American employees were given preferential treatment regarding their scheduling, break times, and parking. Lynch and Rogers permitted African-American employees to violate store policies without repercussion. For example, an African-American employee was allowed to sleep at his desk, but Caucasian employees were not allowed to sit at their desks; they had to stand on the sales floor. Lynch and Rogers instituted a policy that prohibited employees from using personal devices on the sales floor. The policy was not enforced against African-American employees. Bram was not permitted to take information from customers over the phone for a wireless sale. Doing so would have been a direct code of business conduct violation. Lynch and Rogers "overlooked" this violation when an African-American employee took customer information over the phone. Lynch and Rogers allowed African-American employees to disregard their duties related to store opening and closing procedures, which caused Bram to have to perform the duties by herself.
When Bram expressed concern about scheduling issues and a lack of breaks, Rogers became angry with her. Bram heard Rogers scream, "She is so annoying!" and "I hate her and can't stand her questions anymore!" Bram went to her car and cried.
In December 2013, Bram was scheduled against AT&T policy to work nine days in a row. Bram spoke with her union representative, and as a result the schedule was changed. The following week, the schedule was nearly the same as the previous week. When Bram questioned Lynch and Rogers about the schedule, they yelled at her "What is it with you and the schedule!" Lynch and Rogers did not yell at African-American store employees. By this time, Bram had begun having a stress twitch in her eye because of the stressful work environment.
On the morning of January 28, 2014, Bram's attorney sent an e-mail to Lynch, Rogers, Vallejos,[2] Kevin Masse (Director of Sales), and Kelly King (Regional President for South Center). Attached to the e-mail was a letter advising that Bram had retained counsel to pursue MHRA claims against AT&T, Lynch, and Rogers, and that Bram would soon be filing a charge of discrimination with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights ("MCHR").
*793 Later that same day, at 1:58 p.m., Bram's co-worker Brandon Lockwood sent an e-mail to Lynch and Vallejos advising that he had overheard Bram talking about her sex life to a co-worker on the sales floor while Bram was on the clock. Lockwood said he overheard Bram tell the co-worker "how [Bram's] sex drive is so high." Lockwood did not recall when he had heard Bram make this comment; it could have been days or months before he sent the e-mail.
Also that day, Lynch asked Vallejos to come to the store to meet with Bram. At 2:30 p.m. Vallejos met with Bram and discussed previous issues that Bram had brought to Vallejos' attention, such as scheduling, parking, and personal phone usage on the floor. Vallejos said she did not feel as if Bram's managers had retaliated against her or had treated Bram differently from her peers. Vallejos also reminded Bram that "if it is not 'PG' it does not belong at work."
The following day, Rogers forwarded Lockwood's e-mail alleging Bram's inappropriate behavior to AT&T's Human Resources Department.
On February 1, 2014, Bram left work 15 or 20 minutes early. The following day, Lynch asked a store employee, Ijeoma Okafor (African-American), why he had not come with them to the 54th Street Grill the previous night. Bram overheard and said to Lynch, "Oh, you guys all went to the 54th Street Grill?" Lynch responded, "Yep, everybody went to the 54th Street Grill." "Everybody" included Lynch, Rogers, and "one other person." Bram thought that everybody who was at work the night before had been invited and that the employees were invited after she left work.
Bram missed work on February 25, 26, and 27, 2014 for medical issues related to past surgeries. On February 28, 2014, Lynch informed Vallejos that current Belton store employee Lockwood had been assisted at a LensCrafters store by a former Belton store employee, Jonathan Boren. Boren told Lockwood that Boren speaks with Bram and Bram was "preparing to take disability leave but had not yet informed management."
On March 11, 2014, Bram was interviewed by AT&T employee Monique Forbes regarding the allegation in Lockwood's January 28th e-mail that Bram spoke about her sex life on the sales floor while on the clock. Bram denied the allegation and refused to sign the interview form.
On March 13, 2014, Vallejos opened an investigation of Bram related to possible FMLA abuse based on the information reported from Lockwood and Boren.
On March 15, 2014, Bram resigned from AT&T. In her resignation letter to Lynch, she stated that she was "forced to resign due to hostile work environment due to AT&T and your discrimination against me because of my race, as well as the retaliation of staff, management, and AT&T." Bram later testified that "[i]t wasn't because of the investigation that [she] tendered [her] resignation" (referring to the investigation related to Lockwood's allegation that Bram talked about her sex life on the sales floor).
Bram subsequently filed a charge of discrimination with the MCHR, and was issued a right to sue letter.
Between September 2013 and March 2014, six Caucasian employees at the Belton store (not including Bram) resigned, were terminated, or took medical leave. All filed charges with the MCHR alleging racial discrimination. During that time, three African-American AT&T employees were transferred to the Belton store.
*794 In August of 2014, Bram filed this action against AT&T alleging counts for racial discrimination, racially hostile work environment, and retaliation for complaining of discrimination.[3] AT&T moved for summary judgment on all three counts, and the trial court granted AT&T's motion. The trial court found Bram failed to establish prima facie cases of race discrimination, hostile work environment based on race, and retaliation. In a footnote, the trial court noted that "[t]he parties briefed and argued orally regarding whether the August 28, 2017 MHRA amendments applied to this case," and while the trial court found that "the Amendments and the new 'motivating factor' standard applied[d], the result in this case would be the same even under the contributing factor standard."
This appeal followed.
Standard of Review
An appeal from the grant of summary judgment is an issue of law that is reviewed de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Daugherty v. City of Maryland Heights , 231 S.W.3d 814, 818 (Mo. banc 2007). A genuine issue of material fact exists if "the record shows two plausible, but contradictory, accounts of the essential facts and the 'genuine issue' is real, not merely argumentative, imaginary, or frivolous." Id. In determining whether a genuine issue of material fact exists, we review the record in the light most favorable to the party against whom judgment was entered. Id. "Summary judgment is seldom appropriate in employment discrimination cases because such cases inherently require the resolution of factual disputes that turn on inferences, rather than direct evidence, of discriminatory animus." Fuchs v. Dep't of Revenue , 447 S.W.3d 727, 731 (Mo. App. W.D. 2014).
Discussion[4]
Retroactivity of the MHRA Amendments
Bram argues that the trial court erred in applying the amended version of the MHRA retroactively to her claims. We agree.
In 2017, the Missouri legislature amended the MHRA, and the amendment went into effect on August 28, 2017. Jordan v. Bi-State Dev. Agency , 561 S.W.3d 57, 58 n.1, 2018 WL 3977158, at *1 n.1 (Mo. App. E.D. Aug. 21, 2018) ; see also § 230.010.[5] The amendment changed the standard used in assessing claims of discrimination under the MHRA. Prior to the amendment, "an employer violated the MHRA if, in taking an adverse employment action, the employee's protected status contributed in any way to the employer's decision to take the adverse action." Gilberg v. Associated Wholesale Grocers, Inc. , 6:15-CV-03365-MDH, 2018 WL 3614982, at *9 (W.D. Mo. July 27, 2018) (emphasis added) (citing Daugherty , 231 S.W.3d at 819-20 ). Post amendment, an employer violates the MHRA if the employee's protected status was the motivating factor in an adverse employment action. See id. ; see also § 213.010(2), RSMo 2017. This new standard is analogous to the one used in employment *795 discrimination claims under federal law, and imposes a higher burden upon the employee than the prior "contributing factor" standard. See Gilberg , 2018 WL 3614982, at *9 ; Cox v. Kan. City Chiefs Football Club, Inc. , 473 S.W.3d 107, 115-16 (Mo. banc 2015) (noting that under the pre-amendment version of the MHRA, an employee must show that the protected characteristic was a "contributing factor" in the discriminatory act, "while federal cases apply the more stringent 'motivating factor' standard").
The question here is which standard applies to Bram's claims: the pre-amendment "contributing factor" standard or the post-amendment "motivating factor" standard. In other words, we must decide if the MHRA amendments operate retroactively.
Amendments to statutes are presumed to operate prospectively, but there are two exceptions: (1) if the legislature clearly expresses an intent that the amendment be given retroactive application, either in the express language of the act or by necessary implication; or (2) the statute is merely procedural or remedial, rather than substantive. See Dalba v. YMCA of Greater St. Louis , 69 S.W.3d 137, 140 (Mo. App. E.D. 2002). We find neither exception applies. First, we find no clearly expressed legislative intent that the amendment be applied retroactively, either in the language of the MHRA or by necessary implication. Second, the amendments were not merely procedural, as AT&T suggests. The amendments effected a substantive change in the law by altering what constitutes prohibited discrimination under the MHRA. This change will eliminate some causes of action for discriminatory acts that were previously actionable under Missouri law. Because the amendments effected a substantive change in the law, and we find no express legislative intent that the amendments apply retroactively, we find the MHRA amendments apply prospectively only. See also Gilberg , 2018 WL 3614982, at *8-9 (holding the MHRA amendments applied prospectively).
Our decision is further supported by the Missouri Supreme Court's 2018 adoption of new Missouri Approved Jury Instructions concerning the MHRA. One instruction explicitly applies to "actions accruing before August 28, 2017," and it continues to apply the "contributing factor" standard to MHRA cases. See MAI 38.01(A). A separate instruction, MAI 38.06, applies to "actions accruing on or after August 28, 2017," and that instruction applies the new, heightened standard.
Having determined that the MHRA amendments are not retroactive, we turn to Bram's claims. Bram alleged the discriminatory conduct occurred in 2013 and 2014. Since her action accrued prior to the amendments taking effect in August 2017, the "contributing factor" standard applies to her claims. Thus, the trial court erred in finding that the MHRA amendments and the "new 'motivating factor' standard applied," and in relying on federal case law that applied the "motivating factor" standard.[6] AT&T argues that the trial court's error was immaterial because the trial court found that "the result would be the same even under the contributing factor standard." But as discussed below, we find *796 that Bram's discrimination and hostile work environment claims survive summary judgment when applying the "contributing factor" standard. Accordingly, Point I of Bram's appeal is granted.
Bram's Discrimination Claim
Under the applicable version of the MHRA, it is unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of that person's race. § 213.055.1(1)(a). As relevant here, "discrimination" is defined as "any unfair treatment" based on race as it relates to employment. § 213.010(5) ; see also Holmes v. Kan. City Mo. Bd. of Police Comm'rs , 364 S.W.3d 615, 627 (Mo. App. W.D. 2012) ("Under the MHRA, discrimination is any unfair treatment based on a protected characteristic." (emphasis in the original) ).
Bram's discrimination claim has three elements: (1) Bram suffered an adverse employment action; (2) Bram's race was a contributing factor; and (3) Bram was damaged as a result. See McGhee v. Schreiber Foods, Inc. , 502 S.W.3d 658, 672 (Mo. App. W.D. 2016) ; Hilfiker v. Gideon Sch. Dist. No. 37 , 403 S.W.3d 667, 670 (Mo. App. S.D. 2012). We find genuine issues of material fact exist as to each of these elements.
First, there is a genuine issue of material fact on the issue of whether Bram suffered an adverse action, i.e., whether her compensation, terms, conditions, or privileges of employment were negatively affected. Bram presented evidence in opposition to summary judgment that Lynch and Rogers blocked sales from Caucasian employees, including Bram, and diverted them to African-American employees, and that when customers asked for Bram by name, Lynch and Rogers would direct those sales away from Bram. There was evidence that these practices affected the compensation of Caucasian employees, such as Bram. A fact-finder could find from such evidence that Bram suffered an adverse action.
We also find that there is a genuine issue of material fact on the issue of whether Bram's race was a contributing factor in the adverse action. "A contributing factor is a factor that contributed a share in anything or has a part in producing the effect." Holmes , 364 S.W.3d at 627. We find this Court's recent opinion in Shore v. Children's Mercy Hospital , 477 S.W.3d 727 (Mo. App. W.D. 2015), to be instructive.
In Shore , a doctor (Caucasian) brought suit against his former employer and former supervisor (African-American) alleging race discrimination and retaliation. 477 S.W.3d at 729. The trial court granted summary judgment to the defendants and we affirmed. Id. After noting that summary judgment is generally inappropriate in cases alleging racial employment discrimination, we found that summary judgment was appropriate in Shore because the plaintiff failed to establish that a genuine issue of material fact existed as to whether his race was a contributing factor to any adverse employment action taken against him. Id. at 732, 735.
In so finding, we observed that there was no allegation that the plaintiff's supervisor or any employee of the hospital "made any derogatory statements about Caucasians generally." Id. at 732. We also found that the plaintiff did not "point to any term or condition of employment that he was denied that other non-Caucasian employees received" and that the plaintiff did not "show that he was treated differently by [the defendants] from the way non-Caucasians were treated." Id. In addition, the plaintiff admitted that he was *797 terminated because of his own behavior, "not because [the defendants] suddenly became hostile to Caucasians generally or to [the plaintiff] specifically because he was Caucasian." Id. at 734.
Bram, on the other hand, brought forward the precise evidence lacking in Shore . There was evidence that Lynch and Rogers made derogatory statements about Caucasians generally.[7] There was also evidence that Bram was denied training and sales, and that she and other Caucasian employees were treated differently than African-American employees regarding scheduling, break times, parking, and enforcement of store policies. Bram stated that Lynch and Rogers yelled at her but did not yell at African-American employees. Bram also stated that she was forced to resign because of racial discrimination and harassment directed at her. We find this evidence sufficiently established a genuine issue on whether Bram's race was a contributing factor in her treatment.
As to the final element of Bram's discrimination claim-she suffered damages as a result of the discrimination-we find Bram's testimony that she was forced to resign due to harassment and discrimination and that she lost sales and income because of her race creates a genuine issue of material fact as to whether she suffered damages.
Viewing the evidence and inferences in the light most favorable to Bram, which we must do under our standard of review, we find genuine issues of material fact exist regarding her claim for racial discrimination. See Daugherty , 231 S.W.3d at 820 (A claim for discrimination "can survive summary judgment if there is a genuine issue of material fact as to whether [race] was a 'contributing factor' in the [adverse employment action]."). Accordingly, the trial court erred in granting summary judgment for AT&T on Bram's discrimination claim, and Point III is granted.
Bram's Hostile Work Environment Claim
The MHRA's prohibition against employment discrimination "includes within its scope ... generalized claims of discrimination based on a course of conduct," such as claims based on a hostile work environment. Fuchs , 447 S.W.3d at 731. "Racial discrimination creates a hostile work environment when discriminatory conduct either creates an intimidating, hostile, or offensive work environment or has the purpose or effect of unreasonably interfering with an individual's work performance." Alhalabi v. Mo. Dep't of Natural Res. , 300 S.W.3d 518, 526 (Mo. App. E.D. 2009).
"A successful claim of hostile work environment discriminatory harassment requires proof that: (1) the plaintiff is a member of a group protected by the MHRA; (2) the plaintiff was subjected to unwelcome protected group harassment; (3) the plaintiff's membership in the protected group was a contributing factor in the harassment; and (4) a term, condition, or privilege of the plaintiff's employment was affected by the harassment."[8]
*798 Fuchs , 447 S.W.3d at 732. There is no dispute that Bram has established the first element of her claim, and we find genuine issues of material fact exists as to the remaining elements such that summary judgment in favor of AT&T was inappropriate.
Discriminatory conduct affects a term, condition, or privilege of employment if "it is sufficiently severe or pervasive enough to alter the conditions of a plaintiffs [sic] employment and create an abusive working environment." Alhalabi , 300 S.W.3d at 527. The conduct must be sufficiently severe or pervasive, "both as it was subjectively viewed by the plaintiff and as it would be objectively viewed by a reasonable person." Id. In assessing the hostility of an environment, we look to the totality of the circumstances. Cooper v. Albacore Holdings, Inc., 204 S.W.3d 238, 245 (Mo. App. E.D. 2006).
Considering the totality of the circumstances, we find genuine issues of material fact exist as to whether Bram suffered discriminatory harassment at the hands of AT&T based on her race and whether such harassment was sufficiently severe or pervasive to alter the terms and conditions of Bram's employment. "Harassment includes discriminatory intimidation, ridicule, and insult." Fuchs , 447 S.W.3d at 733. Bram presented evidence that her supervisors made repeated derogatory comments about Caucasians, and that Bram was unfairly criticized, yelled at, denied sales and training, and required to shoulder additional duties. She also presented evidence that she was treated differently than African-American employees and repeatedly denied privileges that African-American employees received. Whether her race was a contributing factor in this alleged conduct is a question of fact for the jury to decide. Bram's evidence also indicated that she subjectively viewed AT&T's conduct as severe or pervasive: she developed a stress twitch, she cried in her vehicle, and she ultimately resigned.
"Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury." Cooper , 204 S.W.3d at 245 ; see also Fuchs , 447 S.W.3d at 734 ("Whether a reasonable person would objectively consider an employer's behavior towards a claimant severe enough to alter the conditions of her employment and create an abusive working environment is a question of fact." (internal marks omitted) ). Here, viewing the facts in the light most favorable to Bram, there is a genuine issue as to whether a reasonable person would objectively consider AT&T's conduct sufficiently severe or pervasive to alter the conditions of Bram's employment by creating an abusive working environment. "Summary judgment will rarely be appropriate ... in discriminatory harassment cases that turn on whether an employer's conduct is objectively severe or pervasive." Fuchs , 447 S.W.3d at 734. Accordingly, we find that the trial court erred in granting summary judgment in favor of AT&T on Bram's hostile work environment claim, and Point IV is granted.
Bram's Retaliation Claim
Unlike her claims for discrimination and hostile work environment, we find Bram's retaliation claim fails as a matter of law. The MHRA makes it an unlawful *799 practice to retaliate or discriminate in any manner against another person because such person opposed a practice prohibited by the MHRA. See § 213.070(2). Under the facts presented here, Bram would establish her claim of retaliation by proving (1) she complained about discrimination to AT&T;[9] and (2) as a direct result, she suffered damages due to an act of reprisal by AT&T. See Barekman v. City of Republic , 232 S.W.3d 675, 681-82 (Mo. App. S.D. 2007). Regarding the second element, Bram is required to prove that AT&T purposely committed the act of reprisal because of Bram's complaint. Id. at 682 ; see also Walsh v. City of Kan. , 481 S.W.3d 97, 106 (Mo. App. W.D. 2016) ("[I]f a claimant's protected activity was even one contributing factor in the defendant's decision to take an act of reprisal against the claimant, then there has been unlawful retaliation.").
We find Bram failed to present evidence that AT&T committed an act of reprisal for Bram's discrimination complaint that caused Bram to suffer damage. Bram argues that AT&T's acts of reprisal included: (1) Lynch calling Vallejos and asking her to meet with Bram the same day that Bram made the complaint of discrimination; (2) Lockwood sending an e-mail to Bram's supervisors alleging that Bram talked about her sex life on the sales floor; (3) AT&T conducting an investigation into Lockwood's e-mail; (4) AT&T opening an FLMA abuse investigation regarding Bram; and (5) an incident in which Bram was "ostracized" by AT&T employees. We take each of these claimed "acts of reprisal" in turn.
First, Lynch calling her supervisor, Vallejos, and asking Vallejos to meet with Bram was not a retaliatory act that caused Bram damage. Bram neither alleged nor presented evidence that the meeting with Vallejos negatively affected her. In fact, the evidence was that Vallejos discussed with Bram some of Bram's complaints of discrimination. It is not a retaliatory act to discuss an employee's discrimination concerns in the absence of negative repercussions to the employee.
Second, Lockwood's e-mail accusing Bram of inappropriate conduct was not a retaliatory act by AT&T; Lockwood was Bram's co-worker, he was not an AT&T supervisor. Although Bram's theory was that Lynch or Rogers encouraged Lockwood to make the accusation in retaliation for Bram's complaint, she presented no evidence to support this claim. Lockwood denied being encouraged by anyone, including Lynch or Rogers, to make the accusation. The only "evidence" of Bram's theory was her conclusory opinion. "A plaintiff's general, conclusory allegations and opinions, without more, are not sufficient to raise an inference of retaliation." Palesch v. Mo. Comm'n on Human Rights , 233 F.3d 560, 570 (8th Cir. 2000).
Third, Bram presented no evidence that she suffered damage from the investigation into Lockwood's accusation, and she admitted that her resignation was not because of the investigation.
Fourth, she presented no evidence that she suffered damage because an investigation was opened regarding her possible FMLA abuse. In fact, Bram did not even allege she knew about the investigation, *800 which Vallejos opened two days prior to Bram's resignation.
Finally, Bram's claim of "ostracism" was not an actionable retaliatory act that caused Bram to suffer damage. Bram's only evidentiary support for this claim was the incident in which Lynch, Rogers, and one other unknown employee went to dinner without inviting Bram. Although Bram claims that all the employees present at work that evening were invited, she admits she left work early. And even if Bram were intentionally excluded, we find that this single incident of exclusion from a social event would not be an actionable retaliatory act under the MHRA.[10] Cf. Mignone v. Mo. Dep't of Corrections , 546 S.W.3d 23, 36-37 (Mo. App. W.D. 2018) (sufficient evidence that the plaintiff suffered damages by employer's acts of retaliation where the plaintiff showed that she was transferred to more dangerous assignments and her supervisors completed a series of five "Employee Performance Log" entries concerning alleged acts of plaintiff's misconduct, which became part of her personnel file); Walsh , 481 S.W.3d at 107 (the plaintiff suffered damages from a retaliatory act in the form of a denial of work opportunities).
Bram's failure to present any evidence that she suffered damage from a retaliatory act of AT&T was fatal to her retaliation claim. Accordingly, the trial court did not err in granting summary judgment in favor of AT&T on this claim, and Point II is denied.
Conclusion
In sum, we find that the trial court erred in applying the MHRA amendments retroactively to Bram's claims, and in granting summary judgment in favor of AT&T on Bram's claims of discrimination and hostile work environment. However, the trial court did not err in granting summary judgment in favor of AT&T on Bram's retaliation claim. Accordingly, the trial court's judgment is reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.
All concur.

The facts, and the reasonable inferences that can be drawn therefrom, are set forth in the light most favorable to Bram, as she was the party against whom summary judgment was entered. See ITT Commercial Fin. Corp. v. Mid.-Am. Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993).

Because Bram's attorney used an incorrect e-mail address for Vallejos, she did not receive the e-mail until 5:23 p.m. that day, when Rogers forwarded it to her.

Bram initially also brought claims against Lynch and Rogers individually, but dismissed those claims with prejudice prior to the trial court granting AT&T's motion for summary judgment.

For ease of analysis, we address Bram's points out of order.

All statutory references are to RSMo 2000 unless otherwise noted.

Although we agree with Bram's argument, raised in Point V, that the trial court erred in relying on federal case law that applied the "motivating factor" standard, we note that Missouri courts "are guided by federal employment discrimination cases to the extent they are consistent with Missouri law." See Cox , 473 S.W.3d at 115. Therefore, we find no error in the trial court's reliance on federal case law that was consistent with Missouri law. See id.

Evidence of behavior towards or comments directed at other employees in the protected group is one type of circumstantial evidence that can support an inference of discrimination. See Cox , 473 S.W.3d at 123.

In Alhalabi , the Eastern District of this Court included a fifth element: that the employer knew or should have known of the harassment and failed to take appropriate action. 300 S.W.3d at 527. Here, the trial court found that Bram could not demonstrate AT&T "knew or should have known of the alleged harassment against [Bram]" because Bram "admit[ted] that she did not complain about any alleged harassment." However, Bram presented evidence that her supervisors were the harassing parties. "Supervisory employees, having general powers or authority beyond that of mere 'ministerial' employees, are treated as agents of a corporation, and thus, knowledge of the supervisor's conduct, by the supervisor himself, may be imputed to the corporation." Id. at 529. Accordingly, we find that AT&T knew or should have known of the alleged harassment because it was alleged to have been conducted by its supervisory employees.

We reject AT&T's argument that Bram failed to present evidence that would establish this element: the January 28, 2014 letter that Bram's attorney sent via e-mail to Lynch, Rogers, and Vallejos advised that Bram had retained counsel to pursue MHRA claims against AT&T and that Bram would soon be filing a charge of discrimination with the EEOC and MCHR.

To the extent Bram alleged she was ostracized on other occasions, there was no evidence presented that those events occurred after January 28, 2014, when Bram's attorney sent the letter to AT&T management advising a discrimination charge would be filed.