In the
 Missouri Court of Appeals
 Western District
 C.L. CLARK, )
 )
 Appellant, ) WD83821
 )
 v. ) OPINION FILED: April 20, 2021
 )
 AT&T MOBILITY SERVICES, )
 L.L.C., ET AL., )
 )
 Respondents. )

 Appeal from the Circuit Court of Cass County, Missouri
 The Honorable R. Michael Wagner, Judge

 Before Division Three: Thomas H. Newton, Presiding Judge, Gary D. Witt, Judge and
 Thomas N. Chapman, Judge

 Crystal L. Clark ("Clark") appeals the judgment of the Circuit Court of Cass County,

Missouri ("trial court"), granting summary judgment to AT&T Mobility Services, LLC

("AT&T"), and Iesha Lynch ("Lynch") on all of her claims for employment discrimination

and retaliation pursuant to the Missouri Human Rights Act, Section 213.010, et seq.

("MHRA").1 On appeal, Clark raised six points alleging that the trial court erred in: 1)

granting summary judgment on Clark's claim for hostile work environment (race) because

 1
 All statutory references are to RSMo. 2000, as updated as of 2013, the date of the events at issue, unless
otherwise noted.
Clark established a prima facie case; 2) granting summary judgment on Clark's claim for

hostile work environment (age) because there were genuine issues of material fact

regarding her claim; 3) granting summary judgment on Clark's claim for constructive

discharge because there were genuine issues of material fact as to whether she reasonably

felt compelled to resign; 4) granting summary judgment on her claim for race

discrimination because there were genuine issues of material fact as to whether race was a

contributing factor in discriminatory actions taken against her; 5) granting summary

judgment on Clark's claim for age discrimination because there were genuine issues of

material fact as to whether her age was a contributing factor in discriminatory actions taken

against her; and 6) granting summary judgment on Clark's claim of retaliation because

there were genuine issues of material fact as to whether protected activity was a

contributing factor in discriminatory actions taken against her. We affirm in part, reverse

in part and remand.

 Factual and Procedural Background2

 Clark is a White woman, born in December, 1961. She lives in Peculiar, Missouri.

Clark has worked as a real estate agent since 2002, and she had also done retail sales in the

past. Clark had applied for positions with AT&T during a two-year period because she

loved electronics and gadgets and because she needed to obtain good health insurance.

 2
 We view the facts and record in the light most favorable to the party against whom summary judgment
was entered, in this case, Clark. Sofia v. Dodson, 601 S.W.3d 205, 208 (Mo. banc 2020). Although the trial court
recites this standard, it "notes there were significant inconsistencies in Plaintiff's recollection of these alleged
statements over time, and significant inconsistencies in the testimony of Plaintiff's witnesses regarding these alleged
statements." (Emphasis added). This evident credibility assessment is not the province of a court when ruling on
summary judgment. We also note that Clark's appellate brief cites several "facts" that are referenced by pages in the
extensive record in this case that do not support the factual assertion made or by pages of deposition testimony that
do not in fact appear in the record. We do not, therefore, consider these "facts" in support of Clark's appeal.

 2
AT&T hired Clark in August of 2013 to work in its Independence store as a retail sales

agent primarily selling mobile devices and cellular plans. She accepted the position, but

since the Independence store was an hour's commute from her home, she immediately

requested a transfer to the Belton store, which was much closer to her home, significantly

reducing her commute. During her two-week training course, which took place in

downtown Kansas City, a position became open in the Belton store, and she was granted a

transfer. When Clark began at the Belton store, it was managed by Lynch, a Black woman,

but Lynch was on vacation when Clark started, so the two did not meet immediately. When

Lynch returned from vacation, she came to the Belton store when Clark was there

completing some additional training on the computer. Lynch seemed very upset and asked

Clark how she came to be at that store and why she was there at that time; she said that

Clark should not be at the Belton store and accused Clark of going over Lynch's head to

get transferred there. Clark felt intimidated and left the store to take her break; Lynch

"chased" Clark out to her car and told her she did not have to come back. This brought

Clark to tears, and she phoned her husband.

 After that first interaction between Clark and Lynch, their relationship did not

improve. Clark had trouble mastering some of the technology, and, during one meeting,

Lynch asked Clark if her age got in the way of a particular sale. Lynch "gave that sale to

someone else because she thought someone younger could handle the transaction." Lynch

made several comments that Clark was "untrainable" or "uncoachable" because of her age.

Another employee, Megan Sale Bottini ("Sale"), heard Lynch tell Clark that "she wasn't in

the right career field, she couldn't—the technology, because she was older—it was more

 3
like . . . this just wasn't cut out for her because of the whole technology and she wasn't

learning as fast . . . ."

 Lynch also made comments that Clark and other employees found racially hostile.

Sale and Clark both claimed to have heard Lynch say she was never going to hire another

White woman. A third employee, Amy Rennau ("Rennau") heard Lynch say that "she

wasn't ever going to hire another White woman or train a White woman. An elderly White

woman she said." Lynch said she only wanted to hire "my kind of people." And employee

Jonathan Boren testified that he heard Lynch say, right about the time that Clark was hired,

that she was put in place "to clean out older White people here in the store."

 And there were instances when Clark and other White employees believed they

were not given the same treatment as young Black employees. Clark stated that one Black

employee in his twenties, Arthur Price ("Price"), was granted longer breaks than White

employees; was allowed to have his lunch with Lynch and Assistant Manager Deja Rogers,

also Black; and was even allowed to sleep in the break room during his shift without

discipline. Clark also alleged that sales were diverted from herself to Price, and that Lynch

did not allow Clark to help one client who requested Clark by name, and Lynch refused to

allow her to assist another customer who had made an appointment with Clark specifically.

Because the employees were paid on commissions, this impacted her pay. Finally, Clark

alleges that she was denied training on the U-Verse system that Price was given.

 Clark testified that in September of 2013, there was a sales meeting at the store

regarding U-Verse. Lynch told the sales force at the meeting that they needed to know

everything about the customers to sell the U-Verse to meet their customers' specific needs.

 4
Clark expressed her disagreement with Lynch that they needed to know everything about

the customer, because she thought what they really needed was more training on how the

U-Verse system worked. This made Lynch angry, and after the meeting, she pulled Clark

aside and took her to the back room where she and Deja Rogers spoke with Clark privately.

Lynch was very angry and started yelling at Clark, complaining again about how Clark had

been transferred to the Belton store, and accusing Clark of trying to make Lynch look bad

in front of the other employees in the meeting. Clark became very frightened because of

the interrogation, the yelling, and the physical positioning of her supervisors. Clark

attempted to leave, but the door to leave the store was locked. Clark stated that she needed

to get out of the place because "Someone's going to get hurt." Rogers tried to take Clark

back to the back room, but Clark saw her husband in the parking lot, the door was unlocked,

and she was allowed to leave.

 Following the meeting, on September 17, 2013, Clark sent a text message to

Rebekah3 Vallejos ("Vallejos"), an area manager, complaining about Lynch's harassment

of employees in general and of herself in particular and asking to meet with a union

steward. Vallejos scheduled a meeting with herself, Clark, Lynch, and a Black union

representative. Clark left the meeting unsatisfied, feeling that Vallejos was also angry with

her for allegedly going over her head to get transferred to the Belton store. On October 8,

2013, Clark emailed Ann Budnik ("Budnik"), an Employee Relations Manager at AT&T,

 3
 Vallejos's first name is spelled several different ways in the record and we are unable to determine the
proper spelling.

 5
complaining of mistreatment. This email did not mention either age nor race, although she

did mention both in a follow-up phone call with Budnik.

 Clark's last day of work at AT&T was October 9, 2013. She did not report for work

after that date, and did not "call off." Accordingly, AT&T sent Clark a letter stating that

her employment had been terminated since she had abandoned her position. AT&T

conducted an internal investigation of age discrimination (not race) in regard to Clark's

complaints and found no EEO policy violation.

 Clark sued AT&T and Lynch, alleging race discrimination, age discrimination,

hostile work environment, and retaliation.4 AT&T and Lynch filed a motion for summary

judgment on all counts, and the trial court granted the motion on all counts. This appeal

follows.

 Standard of Review

 We review summary judgment de novo. Daugherty v. City of Md. Heights, 231

S.W.3d 814, 818 (Mo. banc 2007) (citing ITT Com. Fin. Corp. v. Mid-Am. Marine Supply

Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). "Summary judgment is appropriate where

the moving party has demonstrated, on the basis of facts as to which there is no genuine

dispute, a right to judgment as a matter of law." Id. "A genuine issue that will prevent

summary judgment exists where the record shows two plausible, but contradictory,

accounts of the essential facts and the genuine issue is real, not merely argumentative,

imaginary, or frivolous." Id. (internal quotation marks omitted). We review the record in

 4
 Clark appeals the trial court's grant of summary judgment on her claim for constructive discharge. But
her complaint enumerates five counts, none of which is labeled constructive discharge.

 6
the light most favorable to the party against whom judgment was entered. Id. The moving

party bears the burden "of establishing a legal right to judgment and the absence of any

genuine issue of material fact required to support the claimed right to judgment." Id.

 "Summary judgment should seldom be used in employment discrimination cases,

because such cases are inherently fact-based and often depend on inferences rather than on

direct evidence." Id. "Summary judgment should not be granted unless evidence could

not support any reasonable inference for the non-movant." Id.

 Discussion

 We begin by noting that the trial court's judgment cited and applied the 2017 version

of the MHRA to this case. The MHRA was amended in 2017, and the amendments became

effective on August 28, 2017. Clark's employment with AT&T occurred completely within

the year 2013, and therefore, the prior version of the law, particularly its "contributing

factor" standard, is applicable to this case. Bram v. AT&T Mobility Servs., LLC, 564

S.W.3d 787, 795-96 (Mo. App. W.D. 2018).

 Discrimination on the Basis of Race

 For ease of analysis, we will address Clark's points on appeal out of order. Clark

brings two claims related to her race, discrimination (Point IV) and hostile work

environment (Point I).

 In Point IV, Clark argues that the trial court erred in granting summary judgment

because she established genuine issues of material fact regarding whether her race was a

contributing factor in discriminatory actions that were taken against her. The MHRA

prohibits an employer from discriminating against any individual with respect to her

 7
compensation, terms, conditions, or privileges of employment because of her race. Section

213.055.1(1)(a). Discrimination is "any unfair treatment" based on race as it relates to

employment. Section 213.010(5); Bram, 564 S.W.3d at 796. To make a claim for racial

discrimination, Clark was required to show: (1) that she suffered an adverse employment

action; (2) that her race was a contributing factor; and (3) that she was damaged as a result.

Bram, 564 S.W.3d at 796.

 There are genuine issues of material fact with respect to all three of these elements.

First, Clark presented evidence that sales were "blocked" from her and other White

employees and diverted to Black employees resulting in the loss of commissions. For

example, Clark stated that she had a question for Lynch during the sale of an iPad, and

Lynch, instead of helping her complete the sale, gave the sale to Price, a Black employee.

Other times customers came in and either asked for Clark by name or had previously made

an appointment with her, and she was prevented from assisting them before they either left

the store or had someone else help them. Clark presented evidence that she was on

commission and that loss of sales affected her pay.5 A fact-finder could find based on this

that Clark suffered an adverse employment action under the MHRA.

 There is also a genuine issue of fact as to whether Clark's race was a contributing

factor to the adverse action. Clark presented evidence that some of her sales were diverted

to Price, a Black employee, and Lynch had made several derogatory remarks about not

wanting to hire or train another older White woman, or hiring more of "our kind."

 5
 AT&T alludes to a document where Clark had listed a "salary," and seems to imply that she was not in
fact paid commissions, but it provided no evidence of this and under our standard of review we review the facts in
the light most favorable to Clark.

 8
"Evidence of behavior towards or comments directed at other employees in the protected

group is one type of circumstantial evidence that can support an inference of

discrimination." Bram, 564 S.W.3d at 797 n.7 (citing Cox v. Kan. City Chiefs Football

Club, Inc., 473 S.W.3d 107, 123 (Mo. banc 2015). Clark also presented some evidence

that Price was given training that she was denied, and that Price enjoyed longer break times

than White employees, that he was allowed to eat his lunch with the Black manager and

assistant manager, and that he was even allowed to sleep in the back room during his shift

without discipline. That these privileges were not extended to White employees creates a

genuine issue of fact as to whether the adverse employment actions were due to Clark's

race.

 Finally, there is an issue of fact as to whether Clark suffered damages. Clark herself

provided testimony that she lost sales that Lynch or Rogers "blocked" her from completing

and that she ultimately was forced to resign due to discrimination and harassment and

partly out of fear for her safety. Clark testified in a deposition that she was physically

guided to a back room after a sales meeting with only Lynch and Rogers, that Lynch started

yelling at her, and that Rogers was sitting in such a way that she felt afraid. She claimed

that out of fear she attempted to leave, stating that someone was "going to get hurt." When

she tried to leave, the front door was locked, and it was not until her husband arrived that

the door was unlocked so she could leave. After this meeting, Clark told AT&T supervisors

that she could not get the help and training she needed and did not feel safe and so she was

going to "throw in the towel." While Clark's brief to this court refers to her resignation as

a separate count of "constructive discharge," it is not set forth as a separate count in her

 9
amended petition, and so it is more appropriately considered as a part of her discrimination

and hostile work environment claims.6 Thus, there are genuine issues of material fact as

to whether Clark suffered damage as a result of racial discrimination.

 Viewing the evidence in the record and the inferences to be drawn therefrom in the

light most favorable to Clark, we find genuine issues of material fact exist regarding her

claim for racial discrimination. See Bram, 564 S.W.3d at 797. Accordingly, the trial court

erred in granting summary judgment on this count, and Clark's Point IV is granted.

 Racially Hostile Work Environment

 In Point I Clark argues that the trial court erred in granting summary judgment as to

her claim of a hostile work environment based on her race in that she established genuine

issues of material fact as to each element of this claim. "The MHRA's prohibition against

employment discrimination includes within its scope . . . generalized claims of

discrimination based on a course of conduct, such as claims based on a hostile work

environment." Id. (quoting Fuchs v. Dept. of Revenue, 447 S.W.3d 727, 731 (Mo. App.

W.D. 2014) (internal quotations omitted).

 A successful claim of a hostile work environment requires the plaintiff to
 show: (1) she is a member of a group protected under the MHRA; (2) she
 was subjected to "unwelcome . . . harassment"; (3) the plaintiff's membership
 in the protected group was a contributing factor in the harassment; and (4) a
 term, condition, or privilege of the plaintiff's employment was affected by
 the harassment.[7]

 6
 AT&T argues that Clark "conceded" that she did not have a claim for constructive discharge because she
was terminated, and so she therefore waived any right to claim that she was forced to resign. But a reading of
Clark's brief in opposition to summary judgment below makes it clear that she was, however inartfully worded,
arguing in the alternative.
 7
 The trial court in its judgment also adds an additional requirement: that AT&T as the employer knew or
should have known of the harassment and failed to take appropriate action. This requirement, however, only applies
where the harasser is a non-supervisory employee or a third party, and thus, the employer is not potentially liable
vicariously but instead under a negligence theory. See Diaz v. Autozoners, LLC, 484 S.W.3d 64, 76 (Mo. App. W.D.

 10
McGaughy v. Laclede Gas Co., 604 S.W.3d 730, 748 (Mo. App. E.D. 2020).

Discrimination on the basis of race creates a hostile work environment when

"discriminatory conduct either creates an intimidating, hostile, or offensive work

environment or has the purpose or effect of unreasonably interfering with an individual's

work performance." Alhalabi v. Mo. Dep't. of Nat. Res., 300 S.W.3d 518, 526 (Mo. App.

E.D. 2009). Importantly, in most cases where a hostile working environment is established,

"the discriminatory acts are not of a nature that can be identified individually as significant

events; instead, the day-to-day harassment is primarily significant . . . in its cumulative

effect." McGaughy, 604 S.W.3d at 748 (internal quotation marks omitted). The

discriminatory harassment affects a term, condition, or privilege of employment when it is

"sufficiently severe or pervasive enough to alter the conditions of the plaintiff's

employment and create an abusive working environment." Id. The severity and

pervasiveness thresholds are viewed both subjectively as to the effects on the employee

and objectively as they would affect a reasonable person. Id. A plaintiff need only show

that harassment affected a term, condition, or privilege of employment by either causing a

tangible employment action or an abusive working environment. Id. "Once evidence of

improper conduct and subjective offense is introduced, it is largely up to the jury to

determine if the conduct rose to the level of being abusive." McKinney v. City of Kan. City,

576 S.W.3d 194, 199 (Mo. App. W.D. 2019).

2015). By contrast, in this case, the principal harassing employee, Lynch, was Clark's supervisor. As such
knowledge of the alleged harassment is imputed to AT&T and the trial court applied an improper standard in
reaching its judgment on this point.

 11
 In this case, we find genuine issues of material fact exist as to whether Clark suffered

discriminatory harassment during her employment with AT&T based on her race and as to

whether the harassment was sufficiently severe and pervasive to alter the terms and

conditions of her employment. Throughout Clark's employment with AT&T, Lynch

complained on multiple occasions that Clark went over her head to secure placement at the

Belton store, even though Clark and Lynch had never met at the time she was transferred.

And while this facially has nothing to do with Clark's race, there is evidence that Lynch

and Rogers, the assistant manager, used derogatory terms regarding White employees, with

Lynch stating she would never hire or train another White woman and that she preferred to

hire people of "her kind."

 "Harassment includes discriminatory intimidation, ridicule, and insult." Fuchs, 447

S.W.3d at 733. Clark presented evidence that Black employees enjoyed privileges at work

that she and other White employees did not, like additional training and extended breaks.

She also presented evidence that she was physically intimidated when Lynch and Rogers

pulled her into a back room after a sales meeting, sat in a manner that added to the

intimidation, and yelled at her. She claimed to have been so afraid that she exclaimed she

needed to get out of there before somebody got hurt, and even then, she could not leave the

store because the door was locked, and it was only after her husband arrived and could see

her that the door was unlocked so that she could leave. She presented evidence that she

felt so uncomfortable that she ultimately decided she could not return to work, and she

abandoned her position with AT&T. This shows that she subjectively found her treatment

abusive, and whether a reasonable person would objectively find the discriminatory

 12
conduct severe enough to alter the terms or conditions of her employment and create a

hostile working environment is a question of fact for the jury. See Bram, 584 S.W.3d at

798. "Summary judgment will rarely be appropriate . . . in discriminatory harassment cases

that turn on whether an employer's conduct is objectively severe or pervasive." Id. We

therefore conclude that the trial court erred in granting summary judgment on Clark's claim

for racially hostile working environment. Clark's Point I is granted.

 Age Discrimination Claim

 In Point V, Clark alleges the trial court erred in granting summary judgment on her

claim of discrimination based on her age. Clark claims that the discriminatory conduct she

suffered was also due to her age. Section 213.055.1(1)(a) also prohibits discrimination by

an employer on the basis of age.8 The elements of an age discrimination claim are

analogous to those for racial discrimination. The employee must show: (1) that she

suffered an adverse employment action; (2) that her age was a contributing factor; and (3)

that she suffered damage as a result. See Stanley v. JerDen Foods, Inc., 263 S.W.3d 800,

803-04 (Mo. App. W.D. 2003).

 As discussed above, there are genuine issues of material fact with respect to whether

Clark suffered an adverse employment action. Clark presented evidence that sales were

"blocked" from her and diverted to younger employees. For example, Clark stated that she

had a question for Lynch during the sale of an iPad, and Lynch, instead of helping Clark

complete the sale, had Price, who was in his twenties, complete the sale. Other times

 8
 213.010(1) defines "age" for purposes of the MHRA as forty or more years old but less than seventy.
Clark was fifty-two.

 13
customers came in and either asked for Clark by name or had previously made an

appointment with Clark, and she was prevented from helping them before they either left

the store or had someone else help them. Clark presented evidence that she was on

commission and that loss of sales affected her pay. A fact-finder could find that Clark

suffered an adverse employment action.

 There is also a genuine issue of material fact as to whether Clark's age was a

contributing factor to the adverse action. Rennau heard Lynch say that "she wasn't ever

going to hire another White woman or train a White woman. An elderly White woman she

said." (emphasis added). When Lynch took the iPad sale from Clark and had Price

complete it, she asked Clark whether her age had gotten in the way of her sale. Lynch

thought that someone younger could handle the transaction. Lynch several times referred

to Clark as "untrainable" because of her age, and Sale had heard Lynch say that Clark

"wasn't in the right career field, she couldn't—the technology, because she was older—it

was more like . . . this just wasn't cut out for her because of the whole technology and she

wasn't learning as fast . . . ." "[E]vidence of remarks or comments which indicate

discriminatory animus on the part of those with decision making authority" may constitute

direct evidence of discrimination. Id. at 804. Clark also presented evidence that Price was

provided training that she, who was much older, was denied. While the trial court's

judgment states that "there was significant evidence that Plaintiff's supervisors' treatment

was based on factors other than her age, such as her defensiveness when she received

coaching and her failure to adhere to company protocols (like her process for seeking

transfer and her questioning of the AT&T Mobility sales process during a meeting), the

 14
court, in ruling a motion for summary judgment, must view all evidence and inferences in

the light most favorable to the non-moving party, which it clearly failed to do. The

evidence, viewed most favorably to Clark, creates a genuine issue of fact as to whether

Clark's age was a contributing factor in the adverse employment actions.

 And there exists a genuine issue of material fact as to whether Clark suffered

damages. Again, Clark provided testimony that she was "blocked" from completing sales

that were diverted to younger employees, and that she eventually felt that she was forced

to resign due to discrimination and harassment. She provided evidence that during her

entire time with AT&T she was denied training to help her sell AT&T's products and that

she was ridiculed and criticized for her difficulties learning the technology. Clark also

provided testimony that the younger manager and assistant manager physically guided her

to a back room after a sales meeting where she was yelled at and intimidated. After the

meeting, she told AT&T that she did not feel supported and that she was going to "throw

in the towel." While Clark claims in her brief that this evidence establishes a separate

count of "constructive discharge," her amended petition did not set forth a count of

constructive discharge, and so it is more appropriately considered as evidence of an adverse

employment action as relates to her claims for discrimination and hostile working

environment, including her claim for age discrimination. There is genuine issue of material

fact as to whether Clark suffered damage as a result of age discrimination.

 Viewing the evidence in the record and inferences to be drawn therefrom in the light

most favorable to Clark, we find genuine issues of material fact exist regarding her claim

 15
for age discrimination. Accordingly, the trial court erred in granting summary judgment

on this count, and Clark's Point V is granted.

 Hostile Working Environment on the Basis of Age

 In Point II, Clark alleges the trial court erred in granting summary judgment on her

claim of a hostile work environment based on her age. Similar to her claim for racially

hostile working environment, to make a successful claim for a hostile working environment

on the basis of age, Clark must show that: (1) that she is a member of a protected group;

(2) that she was subjected to unwelcome harassment; (3) that her membership in the

protected group was a contributing factor in the harassment; and (4) that a term, condition,

or privilege of her employment was affected by the harassment.

 Clark provided evidence that she is in the protected age group in that she was fifty-

two years old when she worked with AT&T, which is between the relevant ages for

purposes of the MHRA, i.e., forty or more years old but less than seventy. Section 213.010.

She also provided evidence that she was subjected to unwelcome harassment. On her very

first interaction with Lynch, Lynch was angry that she was there and that she had been

hired for that store. Lynch followed Clark out to her car when she left for a break and told

her that she did not need to come back. After that, Lynch continued to find fault with

Clark's work, called her uncoachable, denied her training to help her sell the products, and

diverted sales from Clark to younger employees whom she thought could better handle the

sale.

 Clark provided evidence that her age was a contributing factor to the harassment.

As part of the transaction of taking the iPad sale and giving it to Arthur Price, Lynch asked

 16
Clark whether she thought her age interfered with her ability to make the sale. Lynch told

Clark that she thought someone younger could handle the transaction. On another

occasion, Lynch told Clark that she was too old to learn. As stated above, the trial court

improperly focused on evidence that could have supported another nondiscriminatory

reason for the adverse actions other than Clark's age, this fails to view the evidence and

inferences in the light most favorable to Clark, the non-moving party in determining

whether summary judgment is appropriate. In addition, the trial court viewed the evidence

toward a determination of whether Clark's age was the "motivating factor" when Clark only

needed to show that age was a contributing factor, not the motivating factor. See Bram,

564 S.W.2d at 794.

 Clark also provided evidence that the harassment, in its cumulative effect, was

sufficiently severe or pervasive enough to alter the conditions of her employment to create

an abusive working environment. Clark provided evidence that the diversion of sales from

herself to younger employees affected her pay since she was paid on commission, and her

inability to obtain the training necessary to successfully sell the AT&T products also

affected her commissions. Clark also provided evidence that Lynch repeatedly referred to

her as uncoachable or too old to learn and that she was not provided the training and support

that she needed, even after seeking help from higher management than Lynch, such that

Clark felt that she was being forced to resign. Because Clark produced evidence that

Lynch's conduct was subjectively offensive, it should have been "largely up to the jury to

determine if the conduct rose to the level of being abusive." See McKinney, 576 S.W.3d

at 199. Summary judgment will rarely be appropriate in such cases where the case turns

 17
on whether an employer's conduct is objectively severe or pervasive. Bram, 584 S.W.3d

at 798. We therefore conclude that the trial court erred in granting summary judgment on

Clark's claim of hostile working environment due to Clark's age. Clark's Point II is granted.

 Retaliation

 In Point VI Clark alleges the trial court erred in granting summary judgment on her

claim of retaliation for her complaints regarding discrimination at the Belton AT&T store.

Under the MHRA, it is unlawful to retaliate or discriminate in any manner against another

person because the person opposed a practice prohibited by the MHRA. Section

213.070(2). In order to support this claim, Clark would have to show that: (1) she

complained about discrimination under the MHRA; and (2) as a direct result, she suffered

reprisal causing damage. See Bram, 564 S.W.3d at 799.

 Clark alleges that she made complaints based on race and age discrimination to

AT&T management on September 17, 2013, and again on October 8, 2013. She resigned

on October 10, 2013, by refusing to return to work. She argues constructively discharging

an employee may constitute reprisal for engaging in protected activity if one can show a

causal connection between the complaints based on age or race discrimination and her

constructive discharge. Id. But Clark's September 17th text message to Vallejos and her

hotline call to AT&T on the same day were complaints of general mistreatment of

employees by Lynch. Neither of the September 17th complaints can be read as alleging

either race or age discrimination. In fact, the September 17th complaints Clark made

included allegations that Lynch was mistreating Price, the younger Black man whom Clark

otherwise alleges was being given special treatment. This leaves Clark's October 8th

 18
complaints, the first of which was an e-mail which did not make any complaints regarding

discrimination based on race or age and the second was a phone call wherein Clark did

allege that she believed her mistreatment was because she was an older, White woman.

However, Clark alleges no misconduct committed against her following or as a result of

this complaint, that would have forced her to resign her position, as she never returned to

work or had any further contact, either positive or negative with anyone from AT&T after

this complaint prior to her October 10th termination. All of the conduct she alleges that

forced her to resign necessarily occurred before she stopped coming to work. Therefore,

Clark can show no causal connection between her "termination" and her alleged protected

activity in complaining about violations of the MHRA. Clark's Point VI is denied.

 Constructive Discharge

 Clark's Point III on appeal is that the trial court erred in granting summary judgment

against her on her claim for constructive discharge. While the trial court's judgment sets

forth a section declaring that Clark could not establish a claim for constructive discharge

because she had waived it in her pleadings, Clark's amended petition never raised a separate

claim for constructive discharge. As AT&T accurately points out, "constructive discharge"

in and of itself, without underlying discrimination, is not actionable under the MHRA. The

MHRA prohibits discrimination, section 213.055, and retaliation, section 213.070.

Constructive discharge can constitute an adverse action that an employee suffers as a result

of the prohibited activity, and we have analyzed as part of her substantive claims above,

Clark's claims that AT&T's discriminatory or retaliatory actions caused her to resign her

employment. Missouri law does recognize a "claim" for constructive discharge.

 19
Wallingsford v. City of Maplewood, 287 S.W.3d 682, 685 (Mo. banc 2009) ("[A]llegations

of a discriminatory work environment in a case under the [MHRA] could constitute a claim

of constructive discharge."). However, Clark did not raise one, and if she had, to the extent

that Clark would be successful in her direct claims of race or age discrimination, any

damages arising from a constructive discharge claim would be encompassed in the

damages under those claims. Clark would not be entitled to recover twice for the same

conduct causing the same damage under such a claim. Further, to the extent Clark would

fail to establish that her race or age constituted a contributing factor in the adverse actions

which resulted in her refusing to return to her employment, any claim for constructive

discharge based on those actions would fail.

 AT&T argues that Clark waived any claim of constructive discharge, even as an

adverse employment action as an element of her other claims, when she stated in response

to one of the many arguments AT&T made in its motion for summary judgment, that "Clark

does not have a constructive discharge claim because she was fired." While inartfully

drafted, a reading of her filing with the Circuit Court indicates that this argument was an

argument in the alternative rather than a concession of a claim. To the extent that the trial

court foreclosed any consideration that Clark may have been constructively discharged

because her brief before the trial court opposing summary judgment "conceded" that she

had not been constructively discharged, this was in error. Rule 55.10 allows a party to

"state as many separate claims or defenses as the party has regardless of consistency." Both

parties, in various places in the extensive record in this case, refer to Clark's separation

from AT&T as both a "termination" and a "resignation." Thus, Clark's "concession" that

 20
she "does not have a claim for constructive discharge" should not be used as a basis to

discount her substantive claims of discrimination or the damages arising therefrom under

the MHRA. Clark's Point III is granted.

 Conclusion

 For all of the reasons stated above, we affirm in part and reverse in part the judgment

of the trial court, and remand for further proceedings consistent with this opinion.

 Gary D. Witt, Judge

All concur

 21